J-E01001-17

2017 PA Super 294

| | | | |
|---|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA | |
| Appellant | | | |
| v. | | | |
| LEROY MALDONODO | | | |
| Appellee | | No. 1191 EDA 2015 | |

Appeal from the Order Entered March 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003453-2014

BEFORE:  BENDER, P.J.E., BOWES, PANELLA, SHOGAN, LAZARUS, OLSON, DUBOW, MOULTON AND SOLANO, JJ.

OPINION BY BOWES, J.:                          **FILED SEPTEMBER 12, 2017**

The Commonwealth appeals from the March 25, 2015 order precluding it from introducing at trial two jail call recordings in which Appellee, speaking Spanish, allegedly made inculpatory statements.  This sanction was imposed because the Commonwealth ostensibly failed to comply with an earlier order to provide Spanish-to-English transcriptions of 464 other recorded phone calls in addition to the two calls the Commonwealth intended to use.  We reverse.[1]

_____

[1] The Commonwealth timely appealed from the March 25, 2015 order imposing the instant sanctions and has certified, pursuant to Pa.R.A.P.
*(Footnote Continued Next Page)*

The instant charges arose from an alleged robbery. Following postponements for reasons unrelated to the instant dispute, trial was set for February 10, 2015. On February 8, 2015, Appellee filed a motion for discovery sanctions. This motion represented that Appellee had requested in April 2014, *inter alia*, "any and all written or otherwise recorded statements attributed to the defendant, as well as any transcripts and recordings of any electronic surveillance." Motion for Discovery Sanctions, 2/8/15, at ¶ 3. The assistant district attorney had provided, on February 6, 2015, digital copies of 466 calls placed by Appellee while he was incarcerated. These tapes spanned November 13, 2013, to November 19, 2014. The Commonwealth informed counsel at that time that it intended to introduce a total of six minutes from two of these phone calls.

On February 10, 2015, the trial court held a hearing. Counsel argued that the Commonwealth was required to produce transcriptions of each call, translated into English, based upon the theory that she "ha[s] an obligation and a duty [to review], and my client has a right for me to review all of the tapes, not just the six minutes that the Commonwealth wants to use." N.T. Motions Hearing I, 2/10/15, at 13. The Commonwealth countered that it had provided counsel with a translation of the portions of the phone calls

*(Footnote Continued)* ─────────────

311(d), that the order will terminate or substantially handicap its prosecution.

- 2 -

that it intended to introduce at trial, "not for official evidence . . . [but] for [counsel's] benefit so that [counsel] can know exactly what is on the two phone calls[.]" *Id*. at 14-15.[2]

The trial court declined to impose sanctions, but granted a continuance so that defense counsel could review the tapes. The Commonwealth thereafter agreed to provide official transcriptions of "these tapes." However, as we shall explain, the parties take different views of what, if anything, the Commonwealth promised to transcribe when the prosecutor made this statement.

> [COMMONWEALTH]: Your Honor, in the meantime, **I'm going to have these tapes officially transcribed by a certified translator**, not from the court, and provide a copy to Counsel in the meantime.
>
> I would obviously ask for the fastest date possible. I know you have a busy calendar. I think it would take me no more than 30 days to get these transcribed.
>
> . . . .
>
> [APPELLEE]: I would ask the tapes to be provided 60 days prior to trial, the transcripts.
>
> THE COURT: We're just going to give it a regular date because I don't know if he can send it to you 60 days prior if we give it a shorter date.

---

[2] The assistant district attorney spoke Spanish and provided this initial translation. Later, Spanish-speaking detectives prepared a separate transcription.

[APPELLEE]: If we have a short date, Your Honor, could it be 30 days prior to trial?

[COMMONWEALTH]: That's fine.

THE COURT: Okay. Corrine, let's see if we can find a date.

What I'm going to say is that they have to be passed three weeks prior to trial because I want to make sure there is enough time for the transcription to be completed and done right so that you can review it.

*Id*. at 21-22. The court did not enter a separate written order; however, the docket sheet contains an entry stating, "Commonwealth to get prison calls transcribed and passed to Defense 3 weeks prior to trial." Docket entry, 2/10/15.

The Commonwealth did not have any calls transcribed by a certified translator. As a result, Appellee filed a second motion for sanctions, claiming that the trial court "held that the Commonwealth must translate **all of the tapes** provided and provide such tapes to the defense three weeks prior to trial." Motion for Sanctions II, 3/20/15, at 2, ¶ 8 (unnumbered, emphasis added). The motion represented that, on March 2, 2015, the prosecutor informed defense counsel that his office lacked the resources to translate the tapes and suggested to counsel that she review the translation with her client so the parties could "agree on a version that accurately presents the contents of the phone calls." *Id*. at 3, ¶ 9. Appellee rejected this notion, claiming that it would "force [Appellee] to provide evidence against himself and to aid in his own prosecution[.]" *Id*. at 3, ¶ 1.

At another hearing, the prosecutor explained to the court that he had requested a certified translator, but his superiors refused to pay the fee. N.T. Motions Hearing II, 3/25/15, at 5. Instead, he had Spanish-speaking detectives create an additional transcript to replace the previous version. Appellee's counsel reiterated her contention that counsel was "still completely handicapped in the sense that I don't have the other 464 calls that are still not provided to me." *Id*. at 6-7. The trial court granted the motion and precluded the Commonwealth from introducing any of the tapes. The Commonwealth filed a motion to reconsider, which the court denied.

The Commonwealth simultaneously filed a notice of appeal and a concise statement of matters complained of on appeal. The trial court authored its opinion in response, and the matter is ready for our review. The Commonwealth presents the following issue:

> Did the trial court abuse its discretion in suppressing audio recordings of defendant's telephone calls made in prison unless the Commonwealth also translated the calls from Spanish to English and created translated transcripts of the recorded statements?

Commonwealth's brief at 4.

The Commonwealth asserts that it was required only to disclose the two tapes which it informally translated, and avers that it supplied Appellee with the full set of tapes as a matter of policy and professional courtesy. The Commonwealth further argues that the other 464 calls are not material, in that they "are personal conversations that have no relevance to any issue

in this case." Commonwealth's brief at 15. Concomitantly, the Commonwealth asserts it cannot possibly be sanctioned for refusing to transcribe and translate something it was not required to turn over in the first instance. Additionally, the Commonwealth maintains the trial court was not authorized to require the Commonwealth to prepare transcriptions and translations of any call in that the criminal discovery rule speaks only to evidence that actually exists. Finally, the Commonwealth states that Appellee was not prejudiced by its failure to supply a certified translation.

## I

### Applicable law and standard of review

We first set forth the basic principles governing the Commonwealth's discovery obligations in a criminal case. The applicable rule of criminal procedure declares a preference for informal discovery, contemplating that the parties will "make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute." Pa.R.Crim.P. 573(A). Rule 573 states that informal discovery must take place before a party may request discovery via motion. Upon motion by the defendant, the rule delineates the items that the Commonwealth must supply:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to

the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

> (b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;
>
> . . . .
>
> (g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

Pa.R.Crim.P. 573.

Rule 573 does not abridge or limit the Commonwealth's duty to provide discovery pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. "In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Commonwealth v. Burke*, 781 A.2d 1136, 1141 (Pa. 2001) (quotation marks omitted). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

However, the rule imposes greater obligations upon prosecutors than the **Brady** requirements. For instance, (B)(1)(b) requires production of a defendant's written confession. Nevertheless, our cases frequently analyze whether a particular discovery sanction was justified by analyzing whether the evidence was required to be disclosed pursuant to **Brady**. **See e.g. Commonwealth v. Robinson**, 122 A.3d 367 (Pa.Super. 2015) (reversing order precluding Commonwealth from introducing evidence, analyzing **Brady**). That one would draw upon **Brady** principles in determining materiality is unsurprising since the rule limits disclosure to "material" items, Pa.R.Crim.P. 573(B), and "material for **Brady** purposes" has a particular meaning. **See e.g. Commonwealth v. Willis**, 46 A.3d 648 (Pa. 2012) (noting that admissibility at trial is not a prerequisite to disclosure under **Brady**).

If the Commonwealth has violated its discovery obligations, the trial court is authorized to impose sanctions:

> **(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, **or it may enter such other order as it deems just under the circumstances**.

Pa.R.Crim.P. 573 (emphasis added).

Presently, the Commonwealth disclosed all of the evidence by disseminating to Appellee digitized copies of all of Appellee's prison calls. Nonetheless, the trial court prohibited inclusion of the two material tapes, presumably under the emphasized catch-all provision. We apply the deferential abuse of discretion standard to any employed remedy. "The trial court has broad discretion in choosing the appropriate remedy for a discovery violation." *Commonwealth v. Poplawski*, 130 A.3d 697, 718 (Pa. 2015). The term discretion

> imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judges. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary action. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Shaffer*, 712 A.2d 749, 751 (Pa. 1998) (citation omitted).

## II

Trial court's justifications for sanction

Since the trial court has broad discretion in choosing a discovery remedy, we begin with examining why the court imposed the sanction. The trial court set forth two alternative theories justifying the sanction, and we address each in turn. The first theory relied upon contractual law principles,

with the trial court stating that the Commonwealth promised to provide certified transcriptions and translations of all 466 calls. The second theory relied upon a finding that transcriptions and translations were needed so that trial counsel could effectively discharge her duties under the Sixth Amendment.

### III

### First rationale: A contract to provide discovery

### A

### Sanctions for breaking a purported promise to transcribe all calls

We begin with the contractual theory, as the trial court reasoned that the Commonwealth could be sanctioned for its failure to provide certified transcriptions and translations of all calls as it purportedly promised to do, regardless of whether the Commonwealth was required to supply those materials under the law.

The key dispute is what, if anything, the Commonwealth promised to do when the assistant district attorney stated at the first sanctions hearing, "Your Honor, in the meantime, I'm going to have **these tapes** officially transcribed by a certified translator[.]" N.T. Motions Hearing I, 2/10/15, at 21. The trial court apparently interpreted this statement to mean that the Commonwealth promised to provide certified transcriptions of **all** tapes, as opposed to the two it intended to introduce at trial. The trial court states that "[T]he parties reached a binding agreement for the Commonwealth to

- 10 -

provide defense counsel with written transcriptions[.]" Trial Court Opinion, 9/17/15, at 10 (citing *Commonwealth v. Hemingway*, 13 A.3d 491 (Pa.Super. 2011)).

Both parties extensively address this theory and invoke contractual law principles. "Both [A]ppellee and the lower court relied on this representation, and the agreement was memorialized by a court order evident in the docket. The Commonwealth never contested that [an] agreement was made before the trial court." Appellee's brief at 17. The Commonwealth, on the other hand, claims that there was not an agreement at all. "It is settled that for an agreement to exist, there must be a meeting of the minds." Commonwealth's brief at 22. The Commonwealth highlights that, in context, the statement referred only to the two tapes in question, since the volume of the other calls was such that a translator would have to "transcribe and translate more than 15 Spanish-language recordings a day, seven days a week" to comply with the thirty-day time period mentioned by the prosecutor. Commonwealth's brief at 14.

Appellee, like the trial court, relies upon *Hemingway* as controlling the question of whether sanctions are authorized based on a breach of a promise to supply discovery. We find that *Hemingway* is distinguishable. *Hemingway* involved a Commonwealth appeal from an order precluding thirty-four witnesses from testifying due to the prosecution's failure to provide the five co-defendants with transcripts of the witnesses' grand jury

testimony. At a pretrial conference, the Commonwealth had agreed to provide copies of the grand jury testimony transcripts by a particular date. The order outlining that agreement explicitly stated that the failure to do so would result in an order preventing those witnesses from testifying. *Id*. at 494. The Commonwealth provided the materials four days late. Consistent with its earlier order, the trial court precluded the Commonwealth from calling the witnesses.

The Commonwealth appealed, and we observed that the trial court could validly sanction the failure to abide by the order even though the order resulted from the Commonwealth's own agreement to provide the materials by the specific date. *Id*. at 498. However, we determined that the sanction was unwarranted since the Commonwealth had substantially complied with the order, and, looking at the "specific facts of this case and the rationale behind the . . . order, we are constrained to agree . . . that this sanction yielded too extreme a result." *Id*. at 502. Pertinent to the instant appeal, we made this additional observation:

> This does not mean that a trial court cannot preclude evidence or testimony when a binding agreement is reached between the parties, the parties have actual knowledge of the sanction that is to be employed for failing to abide by the terms of the agreement, and one or more of the parties abjectly refuse to comply. However, the record does not support such a finding in the instant case.

*Id*. at 503.

- 12 -

Appellee argues that the aforementioned passage applies herein because, unlike in **Hemingway**, the Commonwealth did not comply with its promise to any extent. We find that the case is inapposite. The circumstances of this case are quite different since a criminal defendant is entitled to review a witness's grand jury transcripts following his or her testimony at trial. Pa.R.Crim.P. 230(B)(2).[3] Thus, **Hemingway** is better understood as a case about **when** the defendants would receive the transcripts, not, as here, **whether** they would receive those items at all. Moreover, as the Commonwealth aptly notes, the instant court order required the Commonwealth to generate evidence. "Nothing in the rule obliges the Commonwealth to **create** transcripts so that it has something to disclose." Commonwealth's brief at 16 (emphasis in original). In comparison, grand jury testimony must be recorded and transcribed by a court reporter. Pa.R.Crim.P. 556.8(A) ("Proceedings before an indicting

_____

[3] **Rule 230.  Disclosure of Testimony Before Investigating Grand Jury**
  . . . .
> (B) Defendant in a Criminal Case:
>     . . . .
> (2) When a witness in a criminal case has previously testified before an investigating grand jury concerning the subject matter of the charges against the defendant, upon application of such defendant the court shall order that the defendant be furnished with a copy of the transcript of such testimony; however, such testimony may be made available only after the direct testimony of that witness at trial.

Pa.R.Crim.P. 230.

- 13 -

grand jury, other than the deliberations and voting of the grand jury, shall be recorded by a court reporter or by a suitable recording device, and a transcript made."). Therefore, the quoted *caveat* from **Hemingway** cannot be divorced from the grand jury context.

Additionally, even assuming that the Commonwealth's ambiguous promise to transcribe "these calls" referred to all 466 of the calls as opposed to the two calls it intended to introduce at trial, there is no indication that the Commonwealth had knowledge of the sanction for noncompliance. Hence, **Hemingway** does not support Appellee's position.

**B**

Appellee's alternative contractual theory

In his substituted *en banc* brief, Appellee now argues that the sanction was justified because the Commonwealth was required to provide certified translations of **only** the two material calls.

> In its renewed argument to this Court *en banc*, the Commonwealth sets up a fallacious straw man, claiming that the trial court and the Panel of this Court required the Commonwealth 'to transcribe and translate, at its own expense, 464 recordings of irrelevant and inadmissible prison telephone calls defendant made on other occasions.' However, the record shows that the trial court ordered the Commonwealth to transcribe and translate only the two pertinent audio recordings.

Appellee's brief at 6.

This statement is rather remarkable considering Appellee continuously represented to the trial court that the Commonwealth was obligated to

transcribe all 466 calls. Indeed, Appellee himself interpreted the trial court's February 10, 2015 order as requiring transcription of all the calls. In his response to the Commonwealth's motion to reconsider the sanction, Appellee stated "The [c]ourt's initial ruling was legally sound and should be enforced. The Commonwealth should be required to produce English transcripts for all the tapes." Appellee's Response to the Commonwealth's Motion for Reconsideration, 4/5/15, at 2.

Plainly, the trial court interpreted the prosecutor's ambiguous statement, "I'm going to have these tapes officially transcribed by a certified translator," to refer to all 466 calls. In the interest of judicial economy, we proceed to examine whether the Commonwealth was required to supply certified transcripts of the two material calls.[4]

The Commonwealth argues that the order cannot be justified even on these limited grounds because it cannot be ordered to provide evidence in a form demanded by the defense, *i.e.*, a transcription prepared by a certified translator. The Commonwealth argues that such an order is inconsistent with **Commonwealth v. Robinson**, 122 A.3d 367 (Pa.Super. 2015). We agree.

---

[4] The Commonwealth does not concede that it even promised to supply certified translations and transcriptions of the two material calls. Rather, it describes the quoted statement as "the Commonwealth's statement of intent to transcribe" those calls. Commonwealth's brief at 13.

*Robinson* involved a Commonwealth appeal from an order sanctioning the Commonwealth for failing to provide transcripts of victims' interviews. The Commonwealth had charged multiple defendants with various counts of physical and sexual abuse of minor victims. *Id*. at 370. As part of the investigation, the victims were interviewed by the Philadelphia Children's Alliance ("PCA"). These interviews were taped, copied, and provided to all defendants. The trial court subsequently granted defendants' request to order the Commonwealth to prepare verbatim written transcriptions of all interviews. We reversed, citing, in part, the *Brady* doctrine of accessibility discussed *supra*. Since the defendants had equal access, we concluded that nothing obligated the Commonwealth to provide the evidence in a particular form.

> Instantly, the Commonwealth provided Appellees during discovery with DVD copies of all the victims' PCA interviews. Despite this disclosure, Appellees filed motions to compel as well verbatim written transcripts of all video interviews, alleging the transcripts were necessary for effective cross-examination and impeachment of the victims because playing the video interviews during cross-examination would be inefficient and cause unnecessary delay. The court granted the motions and ordered the Commonwealth to transcribe the interviews. When the Commonwealth ultimately demurred, the court precluded the Commonwealth from calling the victims to testify at Appellees' respective trials. We think the court's action was in error.
>
> **The Commonwealth has no duty to provide evidence in a form that the defendant demands for the convenience of the defense.** Appellees had no general right of discovery. Once the Commonwealth disclosed the victims' video DVD interviews, the evidence was no longer in the exclusive control of the

Commonwealth. **Thus, the evidence was equally available** to Appellees in a source other than a written transcript.

*Id*. at 373 (emphases added; quotation marks and citations omitted).

Appellee responds that **Robinson** is inapplicable because the trial court ruling therein terminated the case, while here the Commonwealth is merely precluded from introducing the two recordings, and thus the remedy was "not extreme, as it does not end the Commonwealth's prosecution." Appellee's brief at 17. We are not persuaded. **Robinson** did not hold that the scope of the remedy was too drastic in light of the violation. Rather, it concluded that there was simply no violation to sanction in the first place due to the equal access. The same holds true herein.

We recognize that the trial court was concerned that counsel did not actually have access to these calls, as counsel could not understand the calls. In **Robinson**, the interviews were presumably in English and readily understood by the attorneys. Thus, we agree that **Robinson** is not directly controlling to that extent.

However, we cannot agree that certified translations are *per se* required. **Robinson** holds that a defendant is not entitled to evidence in the form he wishes, which is precisely the argument Appellee now makes.[5] "The

_____

[5] We note that Pa.R.Crim. 573(B)(1)(g) requires disclosure of material "transcripts **and** recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained." In this case, *(Footnote Continued Next Page)*

Commonwealth's refusal to have a certified interpreter translate and transcribe the relevant phone calls into English was an issue of fundamental fairness." Appellee's brief at 12. Appellee does not explain why fairness dictates a **certified** translation, as opposed to an **accurate** one, at this stage of the proceedings. The Commonwealth correctly notes that Appellee has confused what the Commonwealth intends to introduce with what it actually introduces at trial. Rule 573's remedial provision applies at any point in the proceedings. If the Commonwealth's transcriptions supplied in discovery deviated from what it actually introduced at trial, nothing prevents Appellee from seeking sanctions at that time.

When addressing whether a remedy is an abuse of discretion, we have stated that, "[t]he remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgressions." *In re York County Dist. Attorney's Office*, 15 A.3d 70, 73 (Pa.Super. 2010) (citation omitted). We fail to see any transgression whatsoever under these facts. Appellee does not claim that the supplied transcriptions were inaccurate in any way, and he refused to speak to his attorney about the matter. Appellee's Response to the Commonwealth's Motion for Reconsideration, 4/5/15, at 2 ("[Appellee] should not be required to help the Commonwealth translate the prison tapes

_(Footnote Continued)_ _____

the Commonwealth voluntarily created and provided a transcription, and we need not reach the separate question of whether this provision would otherwise require the Commonwealth to create one.

in any capacity."). Appellee invokes a number of federal decisions for the proposition that "before conversations in a foreign language may be submitted to a jury, **issues must be addressed about the accuracy of the translation**[.]" Appellee's brief at 13 (emphasis added). His citations do not support his argument as a matter of persuasion. Consider the following passage from **United States v. Morales-Madera**, 352 F.3d 1 (1st Cir. 2003), a case cited by Appellee:

> Commonly, the transcripts and the English translations of those transcripts are produced by the government and copies are then given to the defendant. Sound trial management and considerations of fairness caution that the government provide these copies to defense counsel adequately in advance, **so that disputes concerning the reliability of the transcription in the original language and of the English translation may be brought to the attention of the district court or resolved by agreement. Counsel, of course, may agree to the accuracy in both senses.**

*Id*. at 8 (emphasis added). Herein, Appellee expressly refused to address the accuracy of the transcript provided by the Commonwealth, and, in fact, claimed that agreeing to the accuracy of the transcript in any way would violate his Fifth Amendment privilege against self-incrimination.

Reviewing an offer of proof with his attorney to discuss the accuracy of what the Commonwealth has already transcribed is not the equivalent of forcing Appellee to translate the tapes. Appellee's argument would transform, for example, a pre-trial stipulation to the accuracy of a lab test for drugs into a violation of the Fifth Amendment. Since Appellee refused to

even consider whether the supplied transcriptions and translations were accurate, it is difficult to see how he was prejudiced in any way.

**C**

Applying contractual law principles under these circumstances undermines
Rule 573's purpose

While we are satisfied that the sanction cannot be justified on the contractual basis, we do not hold that an actual binding agreement or a promise to supply discovery that is not otherwise mandated by law is immaterial to remedies. Rather, in these circumstances, where there is much ambiguity, we find that injecting contractual law principles is unwarranted. Rule 573 states a preference for informal discovery and encourages the parties to resolve all discovery disputes in good faith.[6] Forcing the Commonwealth to honor a purported promise to translate all 466 calls, or provide certified translations of the two material calls at its own expense, without analyzing whether it was actually obligated to do so would simply encourage future litigants to avoid good faith efforts, knowing that those efforts might be later construed as a binding promise. According to the trial court and Appellee's logic, the Commonwealth would be in a

_____

[6] We do not suggest that bad faith efforts are irrelevant to remedies or whether the Commonwealth has prosecuted the case with due diligence as required by Pa.R.Crim.P. 600. There is no suggestion herein that the prosecutor's statement was made in bad faith, as the prosecutor's superiors refused to pay the translator's fee.

superior legal position before this Court if it had withheld the evidence it determined was non-material and forced Appellee to fully litigate the discovery issues. Clearly, such an outcome would do violence to the rule's preferences. Moreover, we have previously held that review of a discovery remedy requires an analysis of what the Commonwealth's discovery obligations were. *See Commonwealth v. Jordan*, 125 A.3d 55 (Pa.Super. 2015) (*en banc*) (reviewing, where trial court sanctioned Commonwealth for failing to abide by order to disclose identity of confidential informant, whether trial court could lawfully order disclosure).

We recognize that *Hemingway*, *supra* suggests that a promise to provide discovery is itself a pertinent consideration to the question of remedies. We do not dispute that general proposition. Rather, in this case, where the scope of the Commonwealth's asserted promise is unclear and there is no knowledge whatsoever of a sanction for failing to turn over the material, we do not think Rule 573's purpose would be served by upholding the sanction under this theory.

Having concluded that the contract theory cannot justify the sanction under these facts, we turn our attention to whether the Commonwealth was required to provide transcriptions of all phone calls in the first instance.

**IV**

Trial court's alternative rationale: Sixth Amendment

The trial court's Pa.R.A.P. 1925(a) opinion establishes that it also imposed sanctions due to its belief that the Commonwealth was required not only to disclose all calls, but also provide translated transcriptions as an independent constitutional command outside the realm of discovery caselaw. The trial court reasoned:

> In this case, the prison tapes are discoverable, on request by defense counsel to the Commonwealth, under Pa.R.Crim.P. 573(B)(1)(b) as an inculpatory statement or Pa.R.Crim.P. 573(B)(1)(g) as a recording of any electronic surveillance. The trial court has broad discretion in deciding the admissibility of evidence and in choosing the appropriate remedy for a discovery violation. Under Pa.R.Crim.P. 573(E), "if at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." In fact, the Sixth Amendment demands that in all criminal prosecutions, the accused shall enjoy the right to effective counsel and to be confronted with the witnesses against him. U.S. Const. amend. VI. **Thus, Defendant's Sixth Amendment rights would be violated without a timely produced transcription of the tapes and render counsel ineffective**.

Trial Court Opinion, 9/17/15, at 9 (emphasis added). The trial court also stated that "[T]he Rule of Completeness demands that a defendant possesses a right to admit the rest of the transcript so that the defendant may provide context for an allegedly inculpatory statement or correct

misleading evidence[.]" *Id*. at 11. Hence, the trial court determined that the Commonwealth was required to provide transcriptions of all 466 tapes so that defense counsel could adequately prepare for trial.

We find that the trial court's ruling is a misapplication of the law, and therefore represents an abuse of discretion warranting reversal.

**A**

<u>Disclosure applies only to material evidence</u>

First, the trial court misunderstood the Commonwealth's discovery obligations. Pursuant to both *Brady* and Rule 573, the Commonwealth was only required to disclose **material** evidence. Nonetheless, Appellee represented, and the trial court accepted, that he was entitled to transcriptions of all calls in order to engage in a fishing expedition to find out whether any of the calls provided helpful context. Simply put, Appellee did not establish that the calls were material, and, since the Commonwealth represented that the calls were immaterial, then it need not have provided them.[7] In this respect, we note that Appellee speaks Spanish, can review

_____

[7] The Commonwealth asserts that 464 of the 466 calls do not contain material evidence as a matter of law. Nothing in the record corroborates or dispels that conclusion, as the trial court determined it was required to turn over all the material on the theory that potentially relevant *Brady* items were contained within the calls. The record obviously does not contain transcriptions of all calls since that very point is at issue. It is more accurate to state that the Commonwealth has represented, for purposes of its discovery obligations, that the remaining 464 calls are immaterial.
*(Footnote Continued Next Page)*

the calls, and can assist counsel in identifying any helpful material within those calls.

The fact that the Commonwealth provided more than it was required cannot be used to its detriment. To hold otherwise would create perverse incentives. *Brady* claims typically arise following conviction, when the defendant seeks a new trial based on the failure to turn over evidence. However, as the United States Supreme Court has stated, the post-trial *Brady* standard logically applies to what must be disclosed pre-trial.

> First, in advance of trial, and perhaps during the course of a trial as well, the prosecutor must decide what, if anything, he should voluntarily submit to defense counsel. Second, after trial a judge may be required to decide whether a nondisclosure deprived the defendant of his right to due process. Logically the same standard must apply at both times. For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and **absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose**.

> Nevertheless, there is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge. Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, **the prudent prosecutor will resolve doubtful questions in favor of disclosure.** But to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

*United States v. Agurs*, 427 U.S. 97, 107-08 (1976) (emphases added).

*See Kyles v. Whitley*, 514 U.S. 419, 439 (1995) ("[A] prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. This is as it should be."). [8]

Herein, the Commonwealth provided Appellee with the unfettered ability to review all of the calls despite its averment that 464 of them were immaterial, and, therefore, not subject to disclosure. To repeat our observation *supra*, it would do disservice to the rule's purpose to punish the Commonwealth for erring on the side of disclosure. Access to the material obviously placed Appellee in a better position, despite the Commonwealth's assurances that 464 of the calls were immaterial, than no access at all.

The Commonwealth prudently erred on the side of disclosure and permitted Appellee to go on a fishing expedition, but the trial court determined that the Philadelphia District Attorney's Office must pay for the fishing pole, too. This was erroneous.

**B**

Discovery obligations are satisfied if the defendant has access

Compounding its materiality error, the trial court ignored the legal consequences flowing from the fact of disclosure. Fundamentally, both

---

[8] Tacking is a sailing technique used when the wind is blowing against the desired direction of the vessel.

*Brady* and the rule are designed to ensure that the defendant has access to material evidence and the ability to review that information. As the United States Court of Appeals for the Third Circuit has observed: "*Brady* and its progeny permit the government to make information within its control available for inspection by the defense, and impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed." *United States v. Pelullo*, 399 F.3d 197 (3d Cir. 2005).[9]

Emphasis on access is further reflected by the rule's text requiring the Commonwealth, when applicable, to "permit the defendant's attorney to inspect and copy or photograph [discovery materials]." Pa.R.Crim.P. 573(B)(1). The rule's Comment states that defendants shall not be charged for copies of materials, yet permits the Commonwealth to ask the trial court, on a case-by-case basis, to order the defendant to pay some of the discovery costs:

> The attorney for the Commonwealth should not charge the defendant for the costs of copying pretrial discovery materials. However, nothing in this rule is intended to preclude the attorney for the Commonwealth, on a case-by-case basis, from requesting an order for the defendant to pay the copying costs.

---

[9] With respect to the "within the Commonwealth's control" aspect, we express no opinion whether the jail calls were otherwise accessible to Appellee. The litigation in this case concerns the Commonwealth's obligations once it obtained the calls.

> In these cases, the trial judge has discretion to determine the amount of costs, if any, to be paid by the defendant

Comment, Pa.R.Crim.P. 573. While this comment would appear to be directed at cases involving voluminous documentary evidence, its insertion makes plain that the purpose of discovery is satisfied when the defense has access to the evidence. Nothing requires the Commonwealth to sift through the provided materials on the defendant's behalf.

## C

### The Commonwealth was not required to aid counsel's investigation

Finally, the trial court's ruling did not distinguish between the fact of access and the duty of investigation, but instead collapsed them. This too was erroneous.

The prosecution must disclose a police report containing exculpatory information, but it need not draw arrows directing counsel's eyes to the helpful paragraphs. The Sixth Amendment guarantee of effective assistance of counsel assumes, since counsel is presumed effective, that the attorney will read the materials and find the helpful information. This is why ineffectiveness claims can be premised upon a failure to adequately investigate and review the materials provided to the defense. Thus, the onus is on counsel to review all materials to which she has access. *See Commonwealth v. Stewart*, 84 A.3d 701, 712 (Pa.Super. 2013) (*en banc*) (noting that it can be *per se* unreasonable for defense attorney to conduct

no investigation into known witnesses); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (discussing prejudice inquiry "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence").

However, the court herein mistakenly transformed the Sixth Amendment guarantees of effective counsel and confrontation of witnesses into a generic pre-trial right of discovery. The trial court cites no authority for that proposition, and we are aware of none. "The Sixth Amendment concerns implicated in the *Brady* rule focus on whether the prosecutor's failure to disclose material exculpatory evidence deprived the defendant of a fair trial." *Commonwealth v. Johnson*, 727 A.2d 1089, 1094 (Pa. 1999) (citing *Agurs*, *supra*); *Weatherford v. Bursey*, 429 U.S. 545 (1977) ("There is no general constitutional right to discovery in a criminal case[.]"); *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987) (plurality) ("The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful[.]").

As the trial court recognized, counsel had a duty to investigate the supplied material. The court erred by merging counsel's duty to investigate with the Commonwealth's duty to disclose.[10] If the Commonwealth is secure

---

[10] As a general proposition, the Sixth Amendment's guarantee of effective assistance of counsel requires a lawyer to "undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary." *Commonwealth v. Basemore*, 744 A.2d 717,

*(Footnote Continued Next Page)*

from a post-trial ***Brady*** challenge on the grounds that the evidence was disclosed and accessible to defense counsel, it cannot simultaneously be precluded from entering portions of that evidence due to sheer speculation that counsel, despite that equal access, would presumptively fail to examine that material.[11]   To hold otherwise would be to invert the presumption of

---

*(Footnote Continued)* ──────────────

735 (Pa. 2000) (citing ***Strickland v. Washington***, 466 U.S. 668, 691 (1984)).   The trial court failed to recognize that counsel had access to an obvious source of information in determining what reasonable investigations were necessary: her client, since he was a party to each call and spoke the language.

[11] Equal access paired with the Commonwealth's assurances of immateriality would not necessarily preclude the finding of a ***Brady*** violation after trial.   In ***United States v. Pelullo***, 399 F.3d 197 (3d. Cir. 2005), our sister court discussed the analytical problems under ***Brady*** when a defendant raises a post-trial ***Brady*** claim, had access to the material, but was assured that the material was not helpful:

> Conceptually, we find ourselves at the intersection between two particular branches of the ***Brady*** doctrine. Our jurisprudence has made clear that ***Brady*** does not compel the government to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself.   It is equally clear, however, that defense counsel's knowledge of, and access to, evidence may be effectively nullified when a prosecutor misleads the defense into believing the evidence will not be favorable to the defendant. ***See, e.g., United States v. Shaffer***, 789 F.2d 682, 690 (9th Cir. 1986) (finding suppression where government appraised defense counsel of the existence of certain tapes but also stated that those tapes would be of "no value"); ***Hughes v. Hopper***, 629 F.2d 1036, 1039 (5th Cir. 1980).

> At issue, then, is whether the representations made by the various government attorneys compel a finding of suppression,

*(Footnote Continued Next Page)*

effectiveness, create a presumption of prejudice, and discourage disclosure.

Accordingly, for the foregoing reasons, the trial court committed a clear abuse of discretion in misconstruing the applicable law.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2017

---

*(Footnote Continued)*

where every other pertinent consideration-*i.e.*, (1) the mountainous piles of documents, which belonged to Pelullo, (2) the government's lack of specific knowledge about the existence of favorable, material evidence, and (3) defendant's extended access to, and purported knowledge of, particular documents-weighs against such a finding.

***Id***. at 213 (quotation marks omitted).