J-S46040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　:　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
DANIEL CHARLES LLOYD　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　Appellant　　　　　　:　No. 8 WDA 2025

Appeal from the Judgment of Sentence Entered June 20, 2024
In the Court of Common Pleas of Butler County Criminal Division at
No(s):  CP-10-CR-0001662-2022

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:　　　　　**FILED:  April 2, 2026**

　　　Appellant, Daniel Charles Lloyd, appeals from the judgment of sentence entered in the Butler County Court of Common Pleas, following his jury trial convictions for first-degree murder and conspiracy to commit murder.[1]  We affirm.

　　　The relevant factual and procedural history of this case are as follows. Appellant was charged with first degree murder and conspiracy to commit murder based on his killing of the ex-boyfriend of his co-conspirator, Nicole Schwartz.  At trial, Schwartz testified that she and the victim lived together at her house and sold drugs together.  After the victim was arrested in May of 2022, Schwartz found his drugs and approximately $3,000.00 cash in her house.  She used the drugs herself and used the money to pay bills and buy

---

[1] 18 Pa.C.S.A. §§ 2502(a) and 903, respectively.

more drugs for herself. Shortly thereafter, Schwartz met Appellant and the two started an intimate relationship. Schwartz told Appellant about the victim and about taking the victim's money and drugs, and asked Appellant if he would leave his gun at her house in case the victim got out of jail because she might need it for protection. The day that the victim was released from jail, Schwartz met with Appellant and her brother Dakota Hinchberger at the Longhorn Hotel, where they agreed that the victim was "dying tonight." (N.T. Trial, 5/8/24, at 142).

That evening, the victim was released from jail. Schwartz was not on time to pick up the victim immediately upon his release, so the victim walked to a friend's house and waited there for her. Appellant hid in the back of Schwartz's vehicle, a Kia Seltos, and Schwartz drove the vehicle to the friend's house and picked up the victim. Appellant stayed hidden in the back of the vehicle. Soon after picking up the victim, Schwartz was pulled over for having an expired registration for her vehicle. Troopers Michael Torres and Casey Fuller questioned Schwartz and the victim and then told them they were free to go on their way and to take care of the registration. Neither trooper noticed Appellant in the back of the vehicle.

After the traffic stop, Schwartz drove the Kia to a nearby spring to get water. When they arrived at the spring, Schwartz got out of the car and then heard a commotion and gunshots. She walked to the driver's seat and saw the victim's body and Appellant in the back seat of the vehicle. Appellant pushed the body out of the car, climbed into the front seat, and shouted at

Schwartz to drive away. Schwartz drove home and went to get her brother to help clean out the garage where they hid the Kia and cleaned it with bleach.

The Pennsylvania State Police received a report of a body on the side of the road, and troopers arrived to investigate. Troopers Fuller and Torres immediately recognized the victim as the passenger they had encountered during the vehicle stop earlier that evening. The troopers confirmed that the victim was an alive passenger at 1:30 am. Neither trooper had noticed a passenger in the rear of the vehicle at the time of the traffic stop; however, they explained that it was an SUV with tinted windows.

Investigators on the scene found a shattered front passenger seat window and a broken side mirror from a Kia Seltos. Troopers investigating the shooting recovered data from a license plate reader in Ellwood City that recorded a photo of the Kia driving away from the spring at 2:06 am. The registration on the Kia came back to Schwartz, and troopers obtained a search warrant for her residence.

While executing the search warrant, troopers noticed an overwhelming odor of bleach from the garage. The Kia Seltos was located inside the garage and was missing the passenger window. Troopers found a shattered car mirror with a hole through it in the garbage can beside the house. When the Kia Seltos was processed at police barracks, investigators found a shell casing in the back seat. The front passenger seat of the Kia Seltos had blood stains on the cushions.

Dr. Todd Luckasevic, the medical examiner, testified that he found three

perforated gunshot wounds in the victim's body—one entering the midline back of his head and exiting through his eye, the second entering on the left mid-back and exiting through the left chest cavity, and the third entering midline mid back and exiting through the right lateral chest. The trajectory of all these wounds through the body was back to front, left to right, and upwards. All three were lethal wounds.

At trial, the defense called Appellant's mother, Makea Stockton, as a witness. On cross examination, the prosecutor asked Stockton if Appellant "gave you the gun and you buried it." (N.T. Trial, 5/9/24, at 53). Defense counsel objected to the question as outside of the scope of Stockton's testimony. At sidebar, the prosecutor argued that the evidence was relevant to Stockton's credibility and whether she spoke the truth, indicating that Stockton had a motive to lie because she was involved in the cover up. The prosecutor explained that a confidential informant had given the Commonwealth this information. The court overruled the objection, and Stockton stated that Appellant had not given her a gun to bury.

During deliberations, the jury presented a question to the court asking whether they could consider the question posed by the prosecutor about whether Stockton had buried the murder weapon. The trial court instructed the jury that it had admitted the question only for the purpose of evaluating Stockton's credibility.

On May 10, 2024, the jury found Appellant guilty of first-degree murder and conspiracy to commit murder. On June 20, 2024, the court sentenced

Appellant to life without the possibility of parole. Appellant filed a timely post-sentence motion on June 28, 2024, and following appointment of new appellate counsel and receipt of the trial transcripts, filed an amended post-sentence motion on October 9, 2024.

The trial court conducted a hearing on the post-sentence motion on October 16, 2024. At the hearing, appellate counsel raised an issue about a **Brady**[2] violation concerning whether the Commonwealth withheld a statement from a confidential witness discussing whether Stockton had buried the murder weapon. Counsel admitted that "there was a statement in Ms. Schwartz's second recorded statement where she did indicate that a Tylah Witherspoon had told her that [Appellant's] mother buried the gun." (N.T. Hearing, 10/16/24, at 4). Counsel argued that even if there was not a **Brady** violation, it was at least a discovery violation because the statement "seemed to be an exculpatory statement of some sort which should have been provided." (**Id.** at 4-5).

The prosecutor explained that there was a statement from a confidential informant, Witherspoon, Appellant's father's girlfriend, who provided information to detectives regarding Appellant's whereabouts after the murder. The prosecutor insisted that the defense was aware of the statement, and was aware of the identity of the confidential informant because a October 7, 2022 recorded interview of Schwartz, which had been turned over to defense during

---

[2] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

discovery, indicated that Witherspoon told Schwartz that Stockton had buried the gun. Defense counsel denied receiving any information that the Commonwealth had interviewed Witherspoon. The prosecutor also insisted that the question to Stockton was appropriate because the prosecutor was cross examining a defense witness about her involvement in the crime.

On December 4, 2024, the court entered an order denying Appellant's post-sentence motion and Appellant filed his notice of appeal on December 31, 2024.[3] On January 9, 2025, the trial court issued a Rule 1925(b) order

_____

[3] Pennsylvania Rule of Criminal Procedure 720 establishes that "the judge shall decide the post-sentence motion, including any supplemental motion, within 120 days of the filing of the motion." Pa.R.Crim.P. 720(B)(3)(a). The Rule further provides that the motion shall be deemed denied by operation of law if the judge fails to decide the motion within 120 days. **Id.** Under Rule 720(B)(3)(b), a defendant may obtain one 30-day extension of time for the post-sentence motion based on good cause shown.

Here, the 120-day period for deciding Appellant's post-sentence motion expired on October 28, 2024. Although the trial court indicated that it would sign a proposed order granting Appellant's motion for an extension of the 120-day period to resolve a post-sentence motion, the record does not reflect that the court entered such order on the record. (**See** N.T. Hearing, 10/16/24, at 38). Furthermore, the clerk of courts failed to enter an order deeming the motion denied by operation of law on either the initial 120-day deadline, or the extended deadline (if the court had entered an order extending the time period, the extended time period would have closed on November 27, 2024).

Nevertheless, the failure of the clerk of courts to enter an order on the date the motion was deemed denied by operation of law constitutes a breakdown in the court system, and the appeal period runs from the date the order is actually entered, December 4, 2024, rather than from the date the motion was deemed denied by operation of law. **See Commonwealth v. Watson**, 310 A.3d 307, 310 n.3 (Pa.Super. 2024) (explaining "[w]hen a trial court denies a post-sentence motion after the 120-day period and the appellant, as

*(Footnote Continued Next Page)*

directing Appellant to file a concise statement of errors complained of on appeal within 21-days. The court later granted an extension of time to file the statement, and Appellant filed a timely concise statement of errors complained of on appeal on February 28, 2025.

Appellant raises the following three issues on appeal:

> 1. Did the [t]rial [c]ourt err when it determined that the Commonwealth did not commit a ***Brady*** violation?
>
> 2. Did the [t]rial [c]ourt commit an error of law when it determined that Commonwealth did not violate PA Rule of Criminal Procedure 573?
>
> 3. Did the [t]rial [c]ourt commit an error of law when it allowed improper cross-examination of a defense witness?

(Appellant's Brief at 7).

In his first issue, Appellant claims that the trial court erred when it denied his motion for a new trial based on an alleged ***Brady*** violation. Specifically, he asserts that the Commonwealth withheld information obtained in an interview with Witherspoon. Appellant asserts that the Commonwealth interviewed Witherspoon and then later withheld the statement Witherspoon provided in the interview. Appellant suggests that in addition to the alleged location of the gun, Witherspoon may have provided other information which could possibly be material and exculpatory to the defense. Appellant concedes

---

he did here, files a notice of appeal within 30 days of the denial, the appeal is deemed timely"). Appellant appealed within 30 days of the date that order was actually entered; therefore, we deem the appeal timely.

that without knowing the full extent of the statement, he cannot formulate an argument as to whether it satisfies the **Brady** requirements, but he suggests that this Court should remand to the trial court with instructions for a hearing on the possible **Brady** violation.  We disagree.

Our review of a trial court's denial of a new trial based on a **Brady** claim presents a question of law for which our standard of review is *de novo* and our scope of review is plenary.  **Commonwealth v. Bagnall**, 661 Pa. 123, 139, 235 A.3d 1075, 1084 (2020).  Our Supreme Court "has limited the prosecution's disclosure duty such that it does not provide a general right of discovery to defendants."  **Commonwealth v. Cam Ly**, 602 Pa. 268, 293, 980 A.2d 61, 75 (2009) (citing **Commonwealth v. Counterman**, 553 Pa. 370, 719 A.2d 284, 297 (1998)).  "For a defendant to establish a **Brady** violation, he must show that: (1) the evidence was suppressed by the State, either willfully or inadvertently; (2) the evidence at issue is favorable to the defendant; and (3) the evidence was material, meaning that prejudice must have ensued."  **Commonwealth v. Bryant**, 579 Pa. 119, 161, 855 A.2d 726, 751 (2004) (citing **Strickler v. Greene**, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

A defendant has the burden of proof to demonstrate both that the Commonwealth willfully or inadvertently suppressed or withheld exculpatory evidence, and that the withheld evidence was material.  **Bagnall, supra** at 141, 235 A.3d at 1086.  Evidence is material under **Brady** if there exists a

reasonable probability that the outcome of the trial would have been different if the Commonwealth had disclosed the evidence. ***Commonwealth v. Natividad***, 650 Pa. 328, 353, 200 A.3d 11, 26 (2019). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." ***Id.*** (citation omitted). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." ***Commonwealth v. Haskins***, 60 A.3d 538, 547 (Pa.Super. 2012), *appeal denied*, 621 Pa. 701, 78 A.3d 1090 (2013) (citing ***Commonwealth v. McGill***, 574 Pa. 574, 583, 832 A.2d 1014, 1019 (2003)). ***See also Commonwealth v. Maldonodo***, 173 A.3d 769, 781 (Pa.Super. 2017) (*en banc*), *appeal denied*, 645 Pa. 746, 182 A.3d 991 (2018) (holding that appellee was not entitled to transcriptions of prison calls "in order to engage in a fishing expedition to find out whether any of the calls provided helpful context" because appellee did not establish that calls were material).

Furthermore, "[t]he withheld evidence must have been in the exclusive control of the prosecution at the time of trial." ***Commonwealth v. Robinson***, 122 A.3d 367, 373 (Pa.Super. 2015), *appeal denied*, 634 Pa. 746, 130 A.3d 1289 (2015) (quoting ***Haskins, supra*** at 547). "***Brady*** is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources." ***Id.*** (quoting ***Commonwealth v. Roney***, 622 Pa. 1, 23, 79

A.3d 595, 608 (2013)). *See also Maldonodo, supra* at 781 (holding that Commonwealth had satisfied its discovery obligations where appellee had access to prison calls and could have translated them for counsel).

Instantly, the trial court found that a *Brady* violation did not occur because Appellant knew or, with reasonable diligence, could have uncovered the evidence in question because the statement was available to the defense from other sources. (*See* Trial Court Opinion, 4/9/25, at 3). The court further observed that "*Brady* does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses." (*Id.*) (citations and internal quotation marks omitted). As such, the court concluded that there was no merit to Appellant's *Brady* claim and denied his request for a new trial.

Upon review, we agree with the trial court that Appellant's *Brady* claim does not merit relief. Initially, we conclude that Appellant has failed to establish the materiality of any undisclosed information in Witherspoon's statement, but simply speculates that something in the statement might have helped the defense. *See Natividad, supra*. Although Appellant claims that the statement was material because it concerned the disposition of the murder weapon, the record reveals that the October 7, 2022 interview with Schwartz, which was turned over to the defense, specifically states that Witherspoon had told Schwartz that Stockton (Appellant's mother) had buried the gun. (*See* Commonwealth's Supplemental Brief, 11/14/24, at Exhibit B, Transcript of

October 7, 2022 interview with Nicole Schwartz). Appellant agrees that this particular statement was turned over; however, he alleges that there may have been other information that the Commonwealth obtained in interviewing Witherspoon that was not disclosed.

As this Court has explained, *Brady* does not entitle a defendant to disclosure of evidence simply because defense counsel wishes to engage in a fishing expedition to find out whether the evidence could be helpful. *See Maldonodo, supra*; *Haskins, supra*. Accordingly, we conclude that because Appellant has failed to demonstrate the materiality of the undisclosed interview with Witherspoon, he failed to meet his burden to establish a *Brady* violation.[4] *See Bryant, supra*. Appellant's first issue is meritless.

In his second issue, Appellant claims the Commonwealth's failure to provide a copy of Witherspoon's statement constituted a discovery violation pursuant to Rule of Criminal Procedure 573. Specifically, Appellant argues

---

[4] Moreover, we also agree with the trial court that Witherspoon was a non-governmental source whose identity was known to the defense, and her statement could have been uncovered through reasonable diligence. *See Maldonodo, supra*. Although initially Witherspoon was considered a confidential informant to protect her identity after she aided the police in locating Appellant, her identity was disclosed in Schwartz's October 7, 2022 interview, which was provided to the defense in the Commonwealth's discovery packet. (*See* N.T. Hearing, 10/16/24, at 9-10). Once the Commonwealth disclosed that Witherspoon was a witness, Appellant had the ability to interview Witherspoon himself. As such, because Appellant could have uncovered the evidence in question, we cannot conclude that the statement was suppressed by the Commonwealth, and Appellant failed to satisfy the elements for a *Brady* claim on these grounds as well. *See Robinson, supra*. *See also Bryant, supra*.

that he was not provided a copy of this interview, which he insists was undoubtedly material as it dealt with the disposition of the murder weapon and was used to cross examine a defense rebuttal witness. Appellant also contends that the defense had no access to the statement and that he was prejudiced by the failure to disclose the statement as indicated by the jury's question about whether they could consider the testimony concerning whether Stockton buried the gun. Appellant concludes that the Commonwealth's failure to disclose Witherspoon's interview was a violation of Rule 573, and the trial court erred when it denied Appellant's request for a new trial. We disagree.

Our standard of review is well settled:

> The resolution of issues regarding pre-trial discovery in criminal cases is entrusted to the trial court's discretion and will be upheld absent an abuse of that discretion. ***Commonwealth v. Rucci***, 543 Pa. 261, 670 A.2d 1129, 1140 (1996). Discretion is abused when the trial court misapplies the law, or where its judgment is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will. ***Commonwealth v. DiStefano***, 670 Pa. 347, 265 A.3d 290, 296 (2021).

***Commonwealth v. Holt***, 672 Pa. 460, 517, 273 A.3d 514, 548 (2022).

Pennsylvania Rule of Criminal Procedure 573 governs pretrial discovery. Section (A) concerns informal discovery and requires that "counsel for the parties shall make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute." Pa.R.Crim.P. 573(A). Section (B) provides in relevant

part as follows:

> **(B) Disclosure by the Commonwealth.**
>
> (1) *Mandatory*.  In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.  The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
>> (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

Pa.R.Crim.P. 573(B)(1)(a).

A defendant is required to identify and explain the actual evidence at issue in order to establish that it fell under the mandatory discovery provision. **Commonwealth v. Santos**, 176 A.3d 877, 884 (Pa.Super. 2017), *appeal denied*, 647 Pa. 469, 189 A.3d 986 (2018).  "Without such specificity, the dictates of Pa.R.Crim.P. 573(B)(1)(a) cannot be met as it is not possible to determine whether the material exists, whether it is relevant and material, and whether the Commonwealth possesses the material." **Id.**

This Court has explained the materiality requirements for a possible discovery violation under Rule 573 as follows:

> "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial."  [**Commonwealth v. Green**, 536 Pa. 599, 640 A.2d 1242, 1245 (1994)] (quoting **United States v. Agurs**, 427 U.S. 97, 112-13, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).  "The mere possibility that an item of

> undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." [**Commonwealth v. Chambers**, 570 Pa. 3, 807 A.2d 872, 887 (2002)]. Rather, "material evidence" must be favorable to the accused "so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." [**Commonwealth v. Santiago**, 591 A.2d 1095, 1117 (Pa.Super. 1991)] (quoting [**United States v. Bagley**, 473 U.S. 667, 676, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)].

**Commonwealth v. Ferguson**, 866 A.2d 403, 407 (Pa.Super. 2004), *appeal denied*, 584 Pa. 705, 885 A.2d 40 (2005).

Instantly, the trial court found that Appellant did not establish a Rule 573 violation because Witherspoon's statement regarding disposition of the murder weapon did not constitute mandatory discovery under the rule. The trial court explained that "[a]lthough the Commonwealth did not provide a copy of the actual statement of … Witherspoon to [Appellant], at the post-sentence motion hearing … the Commonwealth stated that the interview recording of … Schwartz on October 7, 2022, when she referenced … Witherspoon was provided to the defense in the Commonwealth's discovery packet." (Trial Court Opinion, 4/9/25, at 4).

We agree with the trial court that Appellant is not entitled to relief on this claim. Notably, as was the case with his **Brady** claim, Appellant failed to identify and explain the evidence at issue. Although Appellant speculates that the remainder of Witherspoon's statement may have contained information that would help the defense, "[t]he mere possibility that an item of

undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality." **_Ferguson, supra_** at 407 (citation omitted). As such, because Appellant failed to show that the evidence was material, he has not met the requirements to show that the Commonwealth's failure to disclose the statement constitutes a Rule 573 violation. **_See id. See also Santos, supra_**. Accordingly, the trial court did not err in denying Appellant's request for a new trial on this ground.

Finally, in his last issue, Appellant argues that the trial court erred when it permitted the Commonwealth to cross examine Stockton by asking her whether she had buried the murder weapon. Appellant argues that although the credibility of a witness may be impeached through evidence, such evidence must be admissible. Appellant asserts that the Commonwealth obtained the underlying information regarding whether Stockton had buried the gun through multiple levels of hearsay, and therefore could not use that evidence to impeach Stockton's testimony. Even if the evidence was not used substantively, and only used to impeach Stockton's credibility, Appellant insists that the evidence still should have been precluded under Rule of Evidence 403 because the probative value of Stockton's credibility was far outweighed by the unfair prejudice caused to Appellant. Appellant claims that the jury's question during deliberations about whether they could consider testimony concerning whether Stockton had buried the gun demonstrates the prejudice to Appellant. Appellant concludes the court's admission of the

question was improper, and this Court must grant relief.  We disagree.

Initially, we note that the failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue on appeal.  **Commonwealth v. Tucker**, 143 A.3d 955 (Pa.Super. 2016), *appeal denied*, 641 Pa. 63, 165 A.3d 895 (2017).  **See also Commonwealth v. Cash**, 635 Pa. 451, 137 A.3d 1262 (2016), *cert. denied*, 580 U.S. 1161, 137 S.Ct. 1202, 197 L.Ed.2d 249 (2017) (explaining that appellant waives claim on appeal where objection raised at trial was different ground for relief than that raised on appeal).  As this Court has explained,

> [i]n order to preserve a claim for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court, or the claim is waived.
>
> On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.  The principal rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error.  By specifically objecting to any obvious error, the trial court can quickly and easily correct the problem and prevent the need for a new trial.  Additionally, the appellate court should not be required to waste judicial resources correcting a problem that the trial court could have easily corrected if it had been given the opportunity to avoid the necessity of granting a new trial.

**Commonwealth v. Russell**, 209 A.3d 419, 429 (Pa.Super. 2019), *appeal denied*, 655 Pa. 508, 218 A.3d 862 (2019) (citations omitted).  Furthermore,

> "[a] party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific

- 16 -

objection there made." ***Commonwealth v. Cousar***, 593 Pa. 204, 231, 928 A.2d 1025, 1041 (2007), *cert. denied*, 553 U.S. 1035, 128 S.Ct. 2429, 171 L.Ed.2d 235 (2008). If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal. ***Commonwealth v. Arroyo***, 555 Pa. 125, 142, 723 A.2d 162, 170 (1999); ***Commonwealth v. Stoltzfus***, 462 Pa. 43, 60, 337 A.2d 873, 881 (1975) (stating: "It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post-trial"); ***Commonwealth v. Duffy***, 832 A.2d 1132, 1136 (Pa.Super. 2003), *appeal denied*, 577 Pa. 694, 845 A.2d 816 (2004) (stating party must make timely and specific objection to preserve issue for appellate review).

***Commonwealth v. Bedford***, 50 A.3d 707, 713-14 (Pa.Super. 2012), *appeal denied*, 618 Pa. 680, 57 A.3d 65 (2012).

Here, during his cross examination of Stockton, the prosecutor asked whether Appellant gave Stockton the gun and she buried it. (***See*** N.T. Trial, 5/9/24, at 53). Appellant made a timely objection to the prosecutor's question, and the trial court initiated the following discussion at sidebar:

THE COURT: What's your objection?

[Defense counsel]: Outside the scope, I called her as a rebuttal witness for the very specific statement. I offered her testimony limited to the statement that was made by Nicole Schwartz that she was present at the house. That's all I offered her for.

THE COURT: I agree.

[Prosecutor]: She has a motive to testify and lie here, Your Honor, and part of the motive is she's involved in the cover up. Through our investigation I recovered that. Through the confidential informant who we're not going to call but I believe that's a proper cross examination question of her

- 17 -

because she's here as the mother, has a motive to lie and took part in parts of this case.

\*     \*     \*

THE COURT: … So your objection is it's beyond the scope of a direct examination.

[Defense Counsel]: Correct. I specifically called her.

THE COURT: And [prosecutor], your position is that's relevant evidence for her speaking the truth and credibility.

[Prosecutor]: Exactly. Yes.

THE COURT: I think it's fair game. I'll allow the cross. Go ahead.

(*Id.* at 53-55).

In its opinion, the trial court opined that Appellant failed to preserve this claim because Appellant did not object on the basis of either relevancy or hearsay and waived his argument based on those grounds on appeal.

Upon review of the record, we agree with the trial court that although Appellant lodged a timely objection to the prosecutor's cross examination, Appellant failed to raise the specific grounds asserted on appeal. When the prosecutor initially asked Stockton whether she had buried the murder weapon, Appellant objected as beyond the scope of the direct examination. On appeal, however, Appellant argues that the question related to hearsay and that its probative value was vastly outweighed by unfair prejudice. Nevertheless, Appellant did not lodge these specific objections at trial. Thus, Appellant's final issue is waived on appeal. *See Russell, supra*; *Bedford,*

- 18 -

*supra*.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  4/2/2026