J-S51022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES ALLEN MULLER | : | |
| | : | |
| Appellant | : | No. 558 EDA 2018 |

Appeal from the Judgment of Sentence December 14, 2017
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000527-2016

BEFORE:  DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 24, 2019**

Appellant James Allen Muller appeals from the judgment of sentence imposed after a jury found him guilty of one count of endangering the welfare of children (EWOC).[1]  Appellant claims (1) the verdict was against the weight of the evidence, (2) the Commonwealth should have been precluded from moving previously undisclosed text messages and videos into evidence, and (3) the trial court abused its discretion when imposing an aggravated range sentence and requiring him to refrain from working and frequenting places where children under the age of eighteen are known to congregate.[2]  We

---

[1] *See* 18 Pa.C.S. § 4304(a)(1).

[2] We have reordered Appellant's issues for the purpose of this appeal.

affirm the conviction and the sentence of imprisonment, but vacate the trial court's sentencing condition.

A review of the trial record reveals the following. Appellant and his wife (Codefendant)[3] came to the attention of police on December 20, 2015, after Appellant reported that their thirteen-year-old adopted daughter (Complainant) went missing.

Several hours after the initial response, Pennsylvania State Trooper Keith Brislin arrived at Appellant's and Codefendant's home at approximately 4:00 a.m. on December 21, 2015. Trooper Brislin conducted a quick search of the outside of the home, and obtained Appellant's and Codefendant's permission to search inside of the home. Inside the home, the trooper discovered a room that lacked "any real furniture" and was "covered in plastic . . . that you would cover your windows with or something like that." N.T., 11/15/17, at 75. Additionally, the trooper observed a small black surveillance camera on the wall above a door in the room. Another camera was located downstairs by the entrance to the laundry room. The trooper later learned that the room was Complainant's bedroom.

Complainant was located at approximately 10:30 a.m. on December 21, 2015, and taken to a hospital. Trooper Brislin made contact with Complainant at the hospital, and observed bruises and cuts on Complainant's body. The trooper took photographs of the injuries on Complainant's face, left shoulder,

_____

[3] Codefendant's appeal is considered in a companion decision at 203 EDA 2018, J-S51021-18.

and back.  Complainant then started to cry and told the trooper that the mark on her back was a bite mark.  Complainant was later interviewed at the Children's Advocacy Center and reported that Appellant and Codefendant mistreated her.

On October 3, 2016, the Commonwealth charged Appellant with one count of EWOC.[4]  Appellant initially entered a negotiated guilty plea for a recommended standard range sentence, but filed a pre-sentence motion to withdraw his plea, which the trial court granted on March 6, 2017.

Appellant and Codefendant proceeded to a joint jury trial that was held in November 2017.  On the first day of testimony, Complainant described living in Appellant and Codefendant's home and the day that led to the investigation of Appellant and Codefendant.

Complainant stated that Appellant and Codefendant adopted her and her biological siblings after the death of her mother.  Complainant and her biological siblings lived together with Appellant, Codefendant, and Codefendant's biological children.

According to Complainant, Appellant's and Codefendant's treatment of her worsened after her biological siblings left the home.  Appellant and Codefendant locked her in her room upstairs, and she would have to knock on the door to exit.  An alarm was also attached to the doorknob.  Complainant stated that the window of her room was kept open, the room was not heated,

---

[4] Codefendant was charged on August 2, 2016.

and she was forced to sleep on the floor. Complainant described occasions when she snuck out of her room to other areas of the house to sleep near heaters. Complainant stated she received burns to her arm and stomach from the heaters.

Complainant testified that Codefendant and Appellant permitted her to use one plate and one cup. Codefendant urged Complainant to keep the cup completely full of water, but to drink all of the water in it. However, Complainant was not allowed to go to the bathroom without asking Appellant or Codefendant. Complainant explained that the plastic covering was put in her room because "there were days [she] would have accidents[ and] pee herself after not going to the bathroom." N.T., 11/15/17, at 135.

Complainant further testified that she was given peanut butter and jelly sandwiches for breakfast, lunch, and dinner. However, when she did not take her medication, do her chores, or do her assignments, she would not eat. Complainant stated that "there w[ere] days that [she] wouldn't eat." *Id.* at 170-71.

Complainant stated that she and Codefendant would fight with their hands and that Codefendant disciplined her by hitting her with a leather belt. Complainant indicated that on one occasion, Codefendant struck her, and Codefendant's ring scratched her face, leaving one of the marks photographed by Trooper Brislin.

Complainant acknowledged that she had personal difficulties while living with Appellant and Codefendant. Complainant explained that she began

cutting herself after she and one of her biological brothers had a fight, and that brother was removed from the home. Complainant admitted that she would hide hairpins and razors and cut herself with them. Complainant also admitted that she was hospitalized for cutting herself, depression, and suicidal thoughts in 2014, and saw a therapist when living with Appellant and Codefendant.[5]

Complainant also described one altercation with Appellant and Codefendant, during which she grabbed a knife and stated she "wanted to die." *Id.* at 179. Although Complainant did not recall injuring Appellant, Appellant received large cuts to his face. Complainant admitted that she previously ran away from the home.

As to the events of December 20, 2015, Complainant testified that Codefendant went out shopping with Complainant's adoptive sister and left Complainant at home with Appellant. According to Complainant, Appellant made her wait to go to bathroom, and she urinated on herself. When Codefendant returned home, Complainant and Codefendant began fighting. Codefendant grabbed her by her shirt, dragged her across the floor, and locked her inside her room. Later, Complainant and Codefendant got into another fight during which Codefendant bit Complainant on the back. Codefendant then made Complainant take off her soiled clothes and throw them away. Codefendant sent Complainant outside in only a t-shirt and

_____

[5] It was undisputed that on one occasion, Codefendant brought Complainant to the therapist's office with a plastic bag containing Complainant's feces.

shorts. Complainant tried to get back inside once or twice, but then decided to leave. Complainant stayed overnight in a neighbor's garage and was found the next morning.

Before a recess on the second day of trial, the Commonwealth indicated at a sidebar conference that there was an objection to its intended witness. Codefendant's counsel objected to the Commonwealth calling a witness to testify about an extraction of data from Codefendant's cellphone. N.T., 11/16/17, at 118. Codefendant's counsel noted that an investigator had downloaded the entire contents of Codefendant's phone to a flash drive, but only printed out a "six or seven-line text message from the thousands that were in there." *Id.* The trial court recessed trial.

The following morning, the trial court held a conference with counsel. *See* N.T., 11/17/17, at 5-15. During the conference, the Commonwealth explained that the Pennsylvania State Police initially seized Codefendant's phone on February 3, 2016, when executing a search warrant. An investigator extracted the contents of Codefendant's phone to a flash drive and then returned Codefendant's phone to Appellant on February 10, 2016.[6] The Commonwealth asserted that it was entitled to admit the entire contents of

---

[6] The "Lantern System" was used to extract all of the data from Codefendant's phone. The Lantern System also produced a report of the data recovered from Codefendant's phone. The contents of Codefendant's phone and the accompanying report were placed onto a flash drive. *See* N.T., 11/17/17, at 18-20. The flash drive is included in the record transmitted to this Court.

Codefendant's phone because Codefendant and Appellant were in actual possession of Codefendant's phone.

Codefendant's counsel responded that Codefendant and Appellant lost Codefendant's phone when their home was sold at a tax sale and noted that criminal charges were not filed until August of 2016. Codefendant's counsel emphasized that the defense requested discovery, and that in response, the Commonwealth provided them with two text messages found on Codefendant's phone. Codefendant's counsel asserted that the Commonwealth's failure to provide information about the remaining contents of Codefendant's phone violated its duty to disclose material information before trial.

The Commonwealth presented three arguments in support of its proffer. First, the Commonwealth asserted that because Codefendant had equal access to the phone, it was under no obligation to disclose the entire contents of Codefendant's phone or identify all of the materials it intended to use at trial.[7] Second, the Commonwealth suggested that Codefendant was aware that the Pennsylvania State Police extracted the contents of her phone, but did not file a motion requesting copies of the extracted data. Third, the Commonwealth questioned Codefendant's assertions that Codefendant lost her phone, noting,

_____

[7] The Commonwealth cited **Commonwealth v. Maldonodo**, 173 A.3d 769 (Pa. Super. 2017) (*en banc*), to support its arguments based on "equal access."

in part, that Codefendant's counsel used photographs from Codefendant's phone during cross-examination of the Commonwealth's witnesses.[8]

Appellant's counsel joined Codefendant's objection. Appellant's counsel observed that the time for discovery was shorter for Appellant than Codefendant given Appellant's plea negotiations. Appellant's counsel added that the admission of the evidence was prejudicial because the evidence lacked context.

The trial court overruled Codefendant's objections, and the Commonwealth presented testimony regarding the entire contents of Codefendant's phone and an extraction report. The Commonwealth moved into evidence the flash drive containing a copy of the entire contents of Codefendant's phone as Exhibit 21. Additionally, the Commonwealth played nine videos recovered from Codefendant's phone during its case-in-chief and used some of the videos during its closing argument.[9]

_____

[8] Appellant responded that the photographs she used during cross-examination were produced and preserved for a prior dependency proceeding involving Complainant.

[9] The record does not indicate whether the Commonwealth provided Appellant with copies of the flash drive, the extraction report, or the specific videos before presenting them at trial.

Our review reveals that the videos documented Codefendant verbally disciplining Complainant in a harsh tone. Two of the videos show Complainant eating ramen noodles with her fingers while Codefendant is heard talking to Complainant. In addition to playing the videos during its case-in-chief, the Commonwealth replayed some of the videos during its closing arguments. Appellant did not object to the specific publication or testimony regarding any

Appellant and Codefendant testified in their own defense. They denied abusing Complainant or depriving her of furniture, food, heat, or access to a bathroom. Appellant and Codefendant asserted that Complainant's behavior deteriorated after she lived with them for a year. They stated they were concerned about Complainant cutting herself, stealing, smoking cigarettes, urinating and defecating in her room, and being physically aggressive toward them. Codefendant denied striking Complainant, but acknowledged that she would place Complainant in a "bear hug" when Complainant became aggressive.

Codefendant indicated that on the day Complainant left the home, Complainant urinated in her room near a dresser. Codefendant and one of Complainant's adoptive siblings moved the dresser out of the room. However, an altercation occurred when Codefendant confronted Complainant about cleaning up the urine. Codefendant stated that Complainant began striking her, but that she managed to place Complainant in a bear hug until Complainant calmed down.

Codefendant testified that she went to her room to rest after the altercation. When Appellant told Codefendant that Complainant went outside to throw away her soiled clothes, Codefendant became worried because Complainant previously ran away from home. Appellant went back outside,

_____

of the videos or the Commonwealth's use of the videos at trial, and has not identified the specific portions the Commonwealth played at trial.

but Complainant was no longer there. Codefendant and Complainant's adoptive sibling went out to search for Complainant, and Appellant called 911.[10]

Appellant and Codefendant both testified that Complainant previously had a mattress in her room, but they removed it because Complainant hid cutting implements and other stolen items in it. They asserted that they replaced the traditional mattress with an air mattress.

On November 20, 2017, the jury found Appellant guilty of EWOC.[11] On December 14, 2017, the trial court sentenced Appellant to an aggravated range sentence of twelve to twenty-four months' imprisonment. The trial court also imposed the condition that Appellant "refrain from working at or frequenting places where children under the age of eighteen are known to congregate." Sentencing Order, 12/14/17, at 2.

On December 22, 2017, Appellant filed timely post-sentence motions challenging, in relevant part, the weight of the evidence and the trial court's sentence. The trial court denied the motions on January 29, 2018.

_____

[10] During cross-examination of Codefendant, the Commonwealth also questioned Codefendant about receiving social security benefits for Complainant. N.T., 11/20/17, at 85-87.

[11] During closing arguments, the Commonwealth emphasized that Appellant was guilty of EWOC for "failing to protect [Complainant] and care for [Complainant] while [Codefendant] was physically assaulting her and . . . for the ongoing deprivation . . . ." N.T., 11/20/17, at 210. The Commonwealth characterized Appellant as the "silent partner." *Id.* The jury deliberated for approximately one-and-a-half hours before finding Appellant and Codefendant guilty.

- 10 -

Appellant filed a timely notice of appeal on February 22, 2018, and complied with the court's order to file and serve a Pa.R.A.P. 1925(b) statement. The court filed a Rule 1925(a) opinion.

Appellant presents three issues, which we have reordered as follows:

1. Whether the jury verdict was against the weight of the evidence in that it was based primarily on emotion rather than on factual evidence.

2. Whether the Commonwealth violated . . . Appellant's due process by not providing contents of a flash drive containing data extracted from [Codefendant]'s cell phone after discovery requests were made, and whether the [t]rial [c]ourt erred in allowing the Commonwealth to provide only two or three text messages from the flash drive and to play parts of videos rather than entire video clips.

3. Whether the [t]rial [c]ourt erred in considering discretionary aspects of sentencing and in including the provision in the Sentencing Order that . . . Appellant "refrain from working and frequenting places where children under the age of eighteen are known to congregate."

Appellant's Brief at 8.

In his first issue, Appellant suggests that he is entitled to a new trial because the verdict was against the weight of the evidence. *Id.* at 29-30. By way of background, Appellant challenged the weight of the evidence in his post-sentence motion, asserting that "there [wa]s no credible evidence to establish the elements of [EWOC] based on the record as against [Appellant], and therefore the verdict [wa]s against weight of the evidence." Post Sentence Mot., 12/22/17, at 21. The trial court denied the motion, reasoning:

The jury was free to assess the credibility of each witness as they testified and was free to weigh the evidence as it was presented

- 11 -

to them. Furthermore, the jury had the opportunity to assess Appellant's credibility as he presented his own testimony and to weigh the evidence that defense counsel presented on his behalf.

Trial Ct. Op., 4/20/18, at 10. The court also emphasized that it instructed the jury to make its decision based on the evidence. *Id.*

On appeal, Appellant insists that the verdict was the product of emotion rather than the evidence. Appellant's Brief at 30. In support, Appellant focuses on the admission of the videos from Codefendant's phone and portions of the Commonwealth's closing argument, which Appellant alleges improperly diverted the jury from deciding the case based on the evidence. *Id.* at 30-31. Appellant's argument ends with a citation to a case involving a claim of prosecutorial misconduct.[12] *Id.* at 31 (citing *Commonwealth v. DeJesus*, 860 A.2d 102, 114 (Pa. 2004), for the proposition that the Commonwealth's closing argument should be limited to the evidence and legitimate inferences from the evidence).

It is well settled that

[a] claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [fact-finder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this

---

[12] We note that at trial, Appellant did not raise a prosecutorial misconduct objection to the Commonwealth's closing argument. *See* N.T., 11/20/17, at 214, 221, 230; Pa.R.A.P. 302(a).

standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted).

Moreover,

[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Id.* (citation omitted).

Following our review of the record, Appellant's arguments, and the relevant law, we find no merit to Appellant's issue. Notably, Appellant fails to acknowledge or discuss Complainant's testimony. As noted by the trial court, Complainant's testimony established that she endured deprivations and abuse while living with Appellant and Codefendant. Although Appellant and Codefendant denied Complainant's allegations, the trial court properly concluded that it was within province of the jury, as the finder of fact, to credit Complainant's testimony and determine that Appellant violated his duty to protect and care for Complainant. *See id.*; *see also* 18 Pa.C.S. § 4304(a)(1).

- 13 -

Accordingly, the trial court did not abuse its discretion in rejecting Appellant's challenge to the weight of the evidence.

In his next issue, Appellant contends that the Commonwealth violated his due process rights by failing to disclose all of the text messages and videos recovered from Codefendant's phone before trial. As noted above, the parties litigated the Commonwealth's proffer of text messages and videos from Codefendant's phone on the third day of trial, and the trial court overruled Appellant's objections.

The trial court, in its Rule 1925(a) opinion, explained its ruling as follows:

> At trial, Detective Christian Robinson testified that he was contacted by Corporal Smith to run a forensic extraction on [Codefendant's] cell phone. He also testified as to how the data was obtained from [Codefendant's] cell phone using the Lantern software system. He testified that the extraction report was performed on February 8, 2016. He testified that the extraction process would have no effect on or alter the contents of [Codefendant's] cell phone in any way. He testified that the contents of the reports generated by the Lantern software system would be an exact replica of the contents of [Codefendant's] cell phone. He testified that after he had completed the forensic extraction, he returned [Codefendant's] cell phone in its original state to Corporal Smith. Finally, he testified that he copied the reports generated by the Lantern software system in their entirety onto the flash drive used by the Commonwealth at trial. [Codefendant's] cell phone was returned to Appellant on February 10, 2016.
>
> The Commonwealth has no duty to provide evidence in a form that the defendant demands for the convenience of the defense. *Commonwealth v. Robinson*, 122 A.3d 367, 373 (Pa. Super. 2015). "If the Commonwealth is secure from a post-trial *Brady*[13]

_____

[13] *Brady v. Maryland*, 373 U.S. 83 (1963).

- 14 -

challenge on the grounds that the evidence was disclosed and accessible to defense counsel, it cannot simultaneously be precluded from entering portions of that evidence due to sheer speculation that counsel, despite that equal access, would presumptively fail to examine that material. [*Maldonodo*, 173 A.3d at 783-84]. . . .

The thumb drive contained the entire contents of [Codefendant]'s cell phone; therefore, when the cell phone was returned to Appellant by the state police on February 10, 2016, the evidence was equally available to Appellant. The evidence was no longer in the "exclusive control" of the Commonwealth. This is not an issue of the Commonwealth's constitutional duty of disclosure.

Although Appellant argued during trial that the cell phone was [Codefendant]'s and therefore he may have not had equal access to it, we would point out that Appellant participated in making those videos. Appellant used [Codefendant]'s cell phone to film the videos. He was aware of what was on [Codefendant's] cell phone before it was even seized by the state police. He was subsequently aware that the Commonwealth had the entire contents of [Codefendant]'s cell phone well before trial commenced.

During trial, the Commonwealth noted that discovery was provided to [Codefendant] on January 24, 2017. Counsel for Appellant noted that she was not sure whether this was the date that discovery was provided to [Codefendant] only or whether it was also provided to her client. However, we would note that Appellant did not file a motion to compel or specifically request that the Commonwealth disclose the entire contents of the thumb drive or the report of the data extracted after [Codefendant's] phone was seized. Furthermore, based on . . . testimony as to the extraction process, the contents of the cell phone were not altered in any way before it was returned to Appellant. Therefore, the evidence was disclosed and accessible to Appellant and counsel.

Once the Commonwealth had put the entire contents of the thumb drive into evidence, Appellant was free to display other text messages and play other videos and/or parts of videos previously published by the Commonwealth for the jury's consideration.

Trial Ct. Op. at 8-10.

- 15 -

On appeal, Appellant challenges the factual basis of the trial court's conclusion in the Rule 1925(a) opinion that he possessed Codefendant's phone. Appellant's Brief at 27-29. Appellant concedes that the Pennsylvania State Police returned Codefendant's phone to him in February 2016. *Id.* at 27. However, Appellant emphasizes the Commonwealth did not initiate criminal proceedings against him until October 2016. *Id.* at 29. Appellant suggests that sometime after the Pennsylvania State Police returned Codefendant's phone, but before trial, Codefendant's phone was lost, when he "lost his home and its contents as a result of a tax sale on the property."[14] *Id.* at 27-28. Lastly, Appellant notes that Codefendant owned the phone. *Id.*

Additionally, Appellant contends that he suffered prejudice because the videos were published to the jury and not played in their entirety. *Id.* at 27. According to Appellant, "[t]he selected videos portrayed [Codefendant] in a very unflattering matter" and were not directly relevant to any of the charges against Appellant or Codefendant. *Id.* at 27-28. In a single sentence, Appellant avers that Codefendant's phone contained exculpatory evidence. *Id.* at 28.

"Decisions involving discovery matters are within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion." *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017) (citation

---

[14] Appellant does not indicate when he was denied access to his home or the phone, and the record does not indicate whether the tax sale occurred before or after charges were filed in this matter.

and quotation marks omitted), *appeal denied*, 189 A.3d 986 (Pa. 2018). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Id.*** (citation and quotation marks omitted).

The purpose of the discovery rules is to prevent a trial by ambush that violates a defendant's right to due process. ***Commonwealth v. Ulen***, 650 A.2d 416, 419 (Pa. 1994) (discussing the prior version of Pa.R.Crim.P. 573). Pennsylvania Rule of Criminal Procedure 573 provides, in relevant, part:

> **(B) Disclosure by the Commonwealth.**
>
> > (1) *Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
> >
> > > (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;
> > >
> > > * * *
> > >
> > > (e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth; [and]
> > >
> > > (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

\* \* \*

(2) *Discretionary With the Court*.

(a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

\* \* \*

(iv) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

\* \* \*

**(E) Remedy**. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(B)(1)(a)(e)-(f), (2)(a)(iv), (E).

The duties to disclose information imposed by **Brady** and Rule 573 are overlapping, but they are not identical.  **See Maldonodo**, 173 A.3d at 774; **see also Commonwealth v. Sullivan**, 820 A.2d 795, 802-03 (Pa. Super. 2003).  The focus of **Brady** is the prompt disclosure of evidence that is favorable to the defense, which is incorporated in Rule 573(b)(1)(a).  Rule

573 is broader to the extent it requires disclosure of inculpatory information. *See Sullivan*, 820 A.2d at 803-804.

Nevertheless, this Court has often analyzed claims involving Rule 573 using principles from *Brady*. *Id.* For example, in the context of *Brady*, it is well-settled that "no *Brady* violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence." *Commonwealth v. Morris*, 822 A.2d 684, 696 (Pa. 2003) (citation omitted). In the context of Rule 573, this Court has also noted: "Where evidence is equally accessible to both the prosecution and the defense, the latter cannot employ [the discovery rules] against the Commonwealth." *See Santos*, 176 A.3d at 883 (citations omitted).

Furthermore, Rule 573 does not require the Commonwealth to divulge its trial tactics or how it may use certain information, and defense counsel has a duty to investigate available information for possible evidence. *See Maldonodo*, 173 A.3d at 783-84; *Commonwealth v. Monahan*, 549 A.2d 231, 235 (Pa. Super. 1988). Similarly, Rule 573 does not entitle a defendant to information in a form most helpful or convenient to the defendants. *See Maldonodo*, 173 A.3d at 783; *Robinson*, 122 A.3d at 373-74. Nevertheless, courts have cautioned that "[b]ecause we are dealing with an inevitably imprecise standard [regarding materiality], and because the significance of an item of evidence can seldom be predicted accurately until the entire record is

complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure." ***Maldonodo***, 173 A.3d at 781-82 (citation omitted).

Even if the Commonwealth violates the disclosure requirements of Rule 573,

> [t]he trial court has broad discretion in choosing the appropriate remedy for a discovery violation. . . . A defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery "does not automatically entitle [an] appellant to a new trial." Rather, [the defendant] must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

***Commonwealth v. Brown***, 200 A.3d 986, 993 (Pa. Super. 2018) (citations omitted). This Court has suggested that in most cases, "[a] continuance is appropriate where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise." ***Commonwealth v. Smith***, 955 A.2d 391, 395 (Pa. Super. 2008) (*en banc*) (citation omitted).

Instantly, as noted by the trial court, Appellant was aware that the Pennsylvania State Police seized and analyzed Codefendant's phone, and that the Commonwealth recovered evidence from Codefendant's phone. Additionally, the record supports the trial court's findings that Codefendant's phone was returned to Appellant before criminal charges were filed, and that Appellant was aware that Codefendant's phone could have contained unfavorable evidence.

Yet, there is also no dispute that Appellant requested discovery after the charges were filed, and that the Commonwealth had in its possession the

Lantern report and the entire contents of Codefendant's phone. In response to Appellant's request for discovery, the Commonwealth provided copies of two text messages that it extracted from Codefendant's phone. The record contains no indication that the Commonwealth provided Appellant with a copy of the extraction report or a copy of the flash drive in response to Codefendant's request for pretrial discovery, or before seeking admission of the contents of Codefendant's phone at trial.

Under these circumstances, we do not read *Maldonodo* and *Robinson* as broadly as the Commonwealth and the trial court. In *Maldonado* and *Robinson*, the Commonwealth disclosed information before trial, *i.e.*, recordings of the defendant's Spanish language prison calls in *Maldonodo*, and a recording of a victim's interview in *Robinson*. *See Maldonodo*, 173 A.3d at 771; *Robinson*, 122 A.3d at 373. In *Maldonodo*, the Commonwealth specifically identified two phone calls it believed were inculpatory, but disclosed all of the recordings the defendant's 466 prison phone calls. *Maldonodo*, 173 A.3d at 771-72. The issue in those cases was whether the Commonwealth had duties to provide the defense with additional information, such as a certified translations of the prison calls or a transcript of the video recording. *See Maldonodo*, 173 A.3d at 781; *Robinson*, 122 A.3d at 373.

This Court, in both *Maldonodo* and *Robinson*, reversed the trial court's pre-trial ruling precluding the Commonwealth from presenting evidence based on the failure to provide additional information. *See Maldonodo*, 173 A.3d at 771; *Robinson*, 122 A.3d at 369. In so doing, this Court noted that the

Commonwealth had no duty to assist the defendant in finding evidence favorable to the defendant when the Commonwealth provided the information to the defense. *See Maldonodo*, 173 A.3d at 783; *Robinson*, 122 A.3d at 371.

The present case, however, raises different issues and facts than those addressed in *Maldonodo* and *Robinson*. First, the information here contained evidence that was unfavorable to the defense. Second, the Commonwealth did not provide the information in its possession during discovery. Indeed, there is no indication in the record that the Commonwealth even provided Appellant and Codefendant's counsel with a courtesy copies of the flash drive when it moved the contents of Codefendant's phone into evidence. Third, unlike *Maldonodo*, the Commonwealth initially indicated that it intended to use two text messages at trial, but then moved the entire contents of Codefendant's phone into evidence.

Therefore, we do not find *Maldonodo* and *Robinson* to be controlling authorities in this case. Accordingly, we do not agree with the trial court's legal reasons for excusing the Commonwealth of any duty to disclose unfavorable evidence under Rule 573.

Even if the Commonwealth violated Rule 573, however, Appellant did not assert any unfair prejudice to his ability to form or present his defense. *See Brown*, 200 A.3d at 993; *accord Smith*, 955 A.2d at 395. The fact that Appellant was, or should have been, aware of the additional unfavorable videos on the phone belies Appellant's claim of surprise. Moreover, Appellant

did not request a continuance to review the additional evidence. Under these circumstances, we conclude Appellant has not established that the admission of the entire contents of Codefendant's phone constituted reversible error under Rule 573. **See Santos**, 176 A.3d at 882.

Appellant next challenges the trial court's sentence. Appellant presents two claims which we address separately.

Appellant initially claims that the trial court's aggravated range sentence of one to two years' incarceration was unreasonable.[15] Appellant argues that "[t]he trial court did not impose a sentence that would reasonably meet [his] rehabilitative needs." Appellant's Brief at 17. Appellant notes that the trial court had two presentence investigation reports (PSI) prepared—one following his plea, and one following trial. **Id.** at 20. According to Appellant, he was interviewed for the first PSI, but not for the second. **Id.** Appellant asserts that "[t]he only significant change regarding . . . Appellant's status during the intervening months between the preparation of the [PSIs] was . . . Appellant's withdrawal of his guilty plea and decision to have a jury trial." **Id.** at 31. Appellant also suggests that the trial court could have ordered him to serve his sentence in a county correctional facility as opposed to a state correctional

---

[15] Appellant's conviction of EWOC was graded as a misdemeanor of the first degree, which carries a maximum term of five years' incarceration. **See** 18 Pa.C.S. § 4304(a)(1), (b)(1)(i); **see also** 18 Pa.C.S. § 1104(1). Appellant's conviction carried an offense gravity score of five and his prior record score was zero. **See** 204 Pa.Code § 303.15. The guidelines, therefore, recommended a minimum sentence between restorative sanctions and nine months' imprisonment, plus or minus three months for aggravating or mitigating circumstances. **See** 204 Pa.Code § 303.16(a).

institution. *Id.* at 13, 19-20, 23. He notes that in light of the fact that he was in custody for 497 days before sentencing, he has "little to no ability to seek parole" before serving his maximum sentence. *Id.*

It is well settled that

> [c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[ ] § 9781(b).

*Commonwealth v. Proctor*, 156 A.3d 261, 273 (Pa. Super. 2017) (some citations omitted), *appeal denied*, 172 A.3d 592 (Pa. 2017). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation and quotation marks omitted).

Here, Appellant preserved his challenges to the sentence of imprisonment in a post-sentence motion, timely appealed, and set forth a concise statement of the reasons relied on for allowance of appeal. *See id.* However, we find no substantial questions arising from Appellant's assertions

that the trial court could have ordered him to serve his sentence in a county facility or that he will likely serve his entire sentence in prison. ***See Commonwealth v. Lee***, 876 A.2d 408, 413 (Pa. Super. 2005). Appellant's arguments that the trial court imposed an aggravated range sentence based on his decision to withdraw his plea and without considering Appellant's mitigating circumstances do raise substantial questions, and we consider those claims. ***See Commonwealth v. Moury***, 992 A.2d 162, 170-71 (Pa. Super. 2010).

> Our standard of review is as follows:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

Section 9781(d) sets forth the factors considered by this Court in evaluating the reasonableness of a sentence:

> **(d) Review of record.—**In reviewing the record the appellate court shall have regard for:
>
>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>>
>> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d). Where a presentence investigation report exists, we shall "presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Walls**, 926 A.2d 957, 967 n.7 (Pa. 2007) (citation omitted). "Even if a sentencing court relies on a factor that should have not been considered, there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines." **Commonwealth v. Sheller**, 961 A.2d 187, 192 (Pa. Super. 2008) (citations omitted); **Commonwealth v. P.L.S.**, 894 A.2d 120, 133 (Pa. Super. 2006).

Instantly, the trial court stated its reasons for imposing a sentence of one to two years' imprisonment as follows:

> The [c]ourt has had the benefit in this matter of a [PSI] and the record presented. The [c]ourt has also had the benefit to review the character reference letters that have been provided by defense counsel today and those will be included with the [PSI] in this matter. The [c]ourt would note that it was the presiding Judge over the Jury Trial in this matter and the Jury concluded that [Appellant] was guilty of the sole [c]harge of [EWOC]. The [c]ourt notes among other things that the crime committed in this matter although not complete does consist of acts of omission. There were acts however that I believe the evidence would support [acts] of commission. The [c]ourt notes based upon that that it found as well that [Appellant] did not take proper action when presented with [Codefendant]'s physical and mental abuse of [Complainant]. The evidence of false imprisonment, unlawful restraint in the [c]ourt's estimation are indeed abnormal and the evidence and that would apply to [Codefendant] but the [EWOC]

- 26 -

[c]harge is tied into [Codefendant]'s actions and the [c]ourt finds the evidence of the [EWOC] in this matter to be likewise abnormal from an [EWOC] case the [c]ourt may normally see coming through the Court system.

N.T., 12/14/17, at 12-13.

In its sentencing order, the trial court further found an aggravated range sentence was appropriate because (1) Appellant took no responsibility for the offense and blamed Complainant, (2) Complainant was vulnerable due to her youthful age while she was in Appellant's care, (3) Appellant showed no remorse towards Complainant's injury, and (4) a lesser sentence would depreciate the seriousness of the offense. Order, 12/15/17.

Following our review, we find no merit to Appellant's contention that the trial court failed to consider Appellant's mitigating circumstances. *See* N.T., 12/14/17, at 12-13; *see also Walls*, 926 A.2d at 967 n.7. We also agree with the trial court's determination that the instant case presented an unusual case of EWOC based on Appellant's acts and omissions and his failure to protect Complainant from Codefendant. *See* N.T., 12/14/17, at 13. Appellant's suggestion that the trial court sentenced him in the aggravated range based on his decision to proceed to trial lacks record support.

We acknowledge that the trial court's order cited inappropriate reasons for sentencing in the aggravated range, including fact that Complainant was vulnerable due to her youthful age and was in the care of Appellant. *See Commonwealth v. Goggins*, 748 A.2d 721, 732 (Pa. Super. 2000) (*en banc*) (noting that "when fashioning a sentence, a sentencing court may not 'double

count' factors already taken into account in the sentencing guidelines" (citations omitted)). Nevertheless, having reviewed the record as a whole, we conclude that the trial court's sentence was reasonable in light of its findings at the sentencing hearing, and that the court did not impermissibly rely on an improper fact. *See* 42 Pa.C.S. § 9781(d); *Sheller*, 961 A.2d at 192. Accordingly, Appellant's challenge to the sentence of imprisonment merits no relief.

Appellant next claims the trial court abused its discretion in requiring that he refrain from working and frequenting places where children under the age of eighteen congregate. Appellant's Brief at 24. Appellant, in a single sentence in his brief, asserts that this condition was "vague and burdensome as it is likely to hinder his ability to gain employment and move forward with his life following a lengthy incarceration." *Id.*

As a general matter, this Court has considered a challenge to a condition imposed as a part of parole or probation as a challenge to the discretionary aspect of the sentence. *See Commonwealth v. Hermanson*, 674 A.2d 281, 282 (Pa. Super. 1996); *Commonwealth v. Koren*, 646 A.2d 1205, 1207 (Pa. Super. 1994). A claim that a probation condition is overbroad goes to the discretionary aspects of a sentence. *See Commonwealth v. Houtz*, 982 A.3d 537, 538 (Pa. Super. 2009); *Commonwealth v. Hartman*, 908 A.2d 316, 319 (Pa. Super. 2006).

However, the statutory authority of a court to impose a challenged condition raises legality of sentence concerns. *See Commonwealth v.*

*Melvin*, 103 A.3d 1, 52 (Pa. Super. 2014) (*en banc*). "Challenges to an illegal sentence cannot be waived and may be reviewed *sua sponte* by this Court." *Id.* (citations omitted).

The Sentencing Code provides:

**(a) General rule.**—In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.

(2) A determination of guilt without further penalty.

(3) Partial confinement.

(4) Total confinement.

(5) A fine.

(6) County intermediate punishment.

(7) State intermediate punishment.

42 Pa.C.S. § 9721(a).

Notably, Section 9756, which governs the imposition of a sentence of total confinement, contains only a limited provision for setting conditions for a "reentry plan." *See* 42 Pa.C.S. § 9756(b)(3), (e). Section 9756(e) defines a reentry plan as "a release plan that may include drug and alcohol treatment, behavioral health treatment, job training, skills training, education, life skills or any other condition deemed relevant by the court." 42 Pa.C.S. 9756(e). Section 9756(b)(3) states, in relevant part:

**Except where the maximum sentence imposed is two years or more**, and except where a mandatory minimum sentence of imprisonment or total confinement is required by law, the court

shall, at the time of sentencing, state whether or not the defendant is eligible to participate in a reentry plan at any time prior to the expiration of the minimum sentence or at the expiration of a specified portion of the minimum sentence.

42 Pa.C.S. § 9756(b)(3).

By contrast, Section 9754 authorizes a trial court to impose conditions of probation, including requiring a defendant to "satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." 42 Pa.C.S. § 9754(c)(13). Similarly, Section 9763, permits the trial court to impose conditions on a defendant's sentence to county intermediate punishment to "do other things reasonably related to rehabilitation." 42 Pa.C.S. § 9763(b)(15); *Melvin*, 103 A.3d at 53.

In *Commonwealth v. Mears*, 972 A.2d 1210, 1211 (Pa. Super. 2009) this Court considered a trial court's sentencing order authorizing random searches of a defendant's residence as a condition of parole. We explained:

> If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.
>
> *Commonwealth v. Leverette*, 911 A.2d 998, 1001-[02] (Pa. Super. 2006) (internal citations omitted).
>
> In the instant matter, the language in the sentencing order is as follows:
>
> AND NOW, this 18th day of March, 2008, it is hereby ORDERED that as a condition of [the defendant's] probation and/or parole on the charge of Violation of the Uniform

- 30 -

Firearms Act (VUFA), section 6105, and for the duration of [the defendant's] probation and/or parole period, [the defendant] is subject to random searches of his/her residence. The search will be limited to the space occupied by [Appellant]. The searches will be conducted by the agents of the Gun Violence Task Force.

Sentencing Order 3/18/08.

First, we note that the trial court did not sentence [the defendant] to probation; thus, there can be no probation conditions. Secondly, because the court sentenced [the defendant] to a maximum term of incarceration of two or more years, [the defendant]'s parole would be under the exclusive supervision of the Pennsylvania Board of Probation and Parole ("PBPP") and not the Court of Common Pleas. 61 P.S. § 331.17, and *see Commonwealth v. Camps*, 772 A.2d 70, 74 (Pa. Super. 2001) (holding that "It is well settled that the Pennsylvania Board of Probation and Parole has exclusive authority to determine parole when the offender is sentenced to a maximum term of imprisonment of two or more years."). Therefore, any condition the sentencing court purported to impose on [the defendant]'s state parole is advisory only. *See* 61 P.S. § 331.18 (A judge in his discretion may make at any time any recommendation he may desire to the board respecting the person sentenced and the term of imprisonment said judge believes such person should be required to serve before a parole is granted to him, but a recommendation made by a judge as aforesaid respecting the parole or terms of parole of such person **shall be advisory only**, and no order in respect thereto made or attempted to be made as a part of a sentence shall be binding upon the board in performing the duties and functions herein conferred upon it.) (emphasis added).

*Id.* at 1211-12 (alterations in original omitted); *accord Commonwealth v. Coulverson*, 34 A.3d 135, 141-42 (Pa. Super. 2011)

Here, as in *Mears*, the trial court sentenced Appellant to a sentence of total confinement with a maximum of two years' imprisonment. That sentence required supervision by the Pennsylvania Board of Probation and Parole. In

imposing that sentence, the court divested itself of the statutory authority to add a probation condition to its sentence under Section 9754. **_See Mears_**, 972 A.2d a 1211-12. The court, furthermore, lacked the statutory authority to impose a requirement of parole. **_See id._** The court provided no other statutory basis to impose a sentencing condition under these circumstances, and our own review reveals no basis for the trial court to have done so.[16] Therefore, we are constrained to vacate the sentencing condition prohibiting Appellant from working and frequenting places where children under the age of eighteen congregate as illegal.[17] **_See id._**

Therefore, we vacate the condition that prohibits Appellant from working or frequenting places where children under the age of eighteen are known to congregate. However, our decision does not disturb the overall sentence, and there is no need to remand this matter for resentencing. **_See Melvin_**, 103 A.3d at 56.

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

_____

[16] The EWOC statute requires a court to "consider ordering an individual convicted of an offense under this section to undergo counseling," but does not authorize the imposition of any other conditions. **See** 18 Pa.C.S. § 4304(c).

[17] Even if the trial court's condition was advisory, we also find the language of the condition vague. In particular, the phrase "frequenting places" did not sufficiently define the conduct the court would have found offensive. The phrase "places where children . . . are known to congregate" would also not have sufficiently apprised Appellant of the areas from which he was precluded.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 5/24/2019*