J-A12011-24

2024 PA Super 242

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
v. :
:
:
NICHOLAS JAMES KELLY : No. 2518 EDA 2023

Appeal from the Order Entered September 27, 2023
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0000727-2023

BEFORE: PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.E.: **FILED OCTOBER 22, 2024**

The Commonwealth appeals from the Bucks County Court of Common Pleas order granting Nicholas James Kelly's motion to suppress and excluding evidence based on its finding that the government failed to timely disclose inculpatory evidence found on Kelly's iPhone. Because Kelly's trial counsel had access to the phone upon request, we conclude that the Commonwealth did not violate its discovery obligations as a matter of law. Therefore, sanctions were not justified. We reverse the order and remand for further proceedings.

This case began when the Commonwealth seized, among other items, Kelly's iPhone pursuant to a search warrant. On October 19, 2022, Eric Landamia, a detective employed by the Bucks County District Attorney's office, connected the iPhone to hardware containing the Graykey program,

_____

[*] Former Justice specially assigned to the Superior Court.

which "extracts the data out of the device[.]" N.T., 9/27/23, at 31. This extraction is performed "[t]o preserve the data that was on the phone at the time it was seized by law enforcement." *Id*. at 33. By extracting a copy of the data, the phone itself is not modified in any way.

The raw data extraction was then uploaded to a separate program, "Cellebrite . . . a program that allows us to view the Graykey extraction and … allows us to sort, generate reports, search for key words, things of that nature." *Id*. The iPhone contained "over 100,000 media files between pictures and video." *Id*. at 40. Following his review of those files, Detective Landamia then "generate[d] two reports." The first report is usable only by "another law enforcement agency or anybody that had Cellebrite." *Id*. at 32. The second report is "an HTML report, which basically means the report opens as a web page and has a series of hyperlinks." *Id*. The detective stated this report is "more user friendly because when it does that it creates a whole file folder system where the user can kind of go into a windows-based view." *Id*. at 32-33. Detective Landamia "created all those reports" and "packaged [it] up, the entirety of it," and gave it to the relevant police agency, in this case, the Warrington Township Police Department. *Id*. at 34-35. The Commonwealth subsequently filed a criminal information on March 6, 2023, charging Kelly with three counts. Specifically, at counts one and two, the Commonwealth charged Kelly with violations of 18 Pa.C.S.A. § 6312, specifying that Kelly possessed "a video of a 10-12 year old female performing oral sex on an adult

male, as well as other … videos and photos." At count three, Kelly was charged with criminal use of a communication device in violation of 18 Pa.C.S. § 7512 due to his use of the iPhone to facilitate the first two charges.

On July 20, 2023, in anticipation of the bench trial scheduled for September 27, 2023, Assistant District Attorney Jovin Jose and a detective employed by the prosecuting police department, Sergeant Stebner, met with Kelly's trial attorney, Louis R. Busico, Esq. Detective Landamia was not present at this meeting. Attorney Busico stated at the hearing on this matter that he took notes during this meeting, which "references 40 videos on the phone. And some of those videos are what the Commonwealth believe[d] to be incriminating evidence. I clearly was told about that back in July." *Id*. at 53. Aside from this meeting, Attorney Busico did not examine the iPhone. Detective Landamia testified that he has, in the past, met with defense attorneys and their experts to review extracted data and would have done so in this case if asked.

On the trial date, Attorney Busico asserted that the Commonwealth violated its discovery obligations. He related that ADA Jose informed him the day before that the Commonwealth intended to provide additional evidence discovered on the iPhone beyond that which was shown at the July 20th meeting. The court heard testimony from Detective Landamia about the additional material. He testified that ADA Jose reached out to him "some time last week or very late the week prior" to discuss the probability of him

testifying. N.T., 9/27/23, at 36. During their conversation, ADA Jose explained that he "anticipated . . . a potential defense and asked me to review the existing extraction that I did in 2022 for any information that would refute such a defense." *Id*. ADA Jose described the anticipated defense as "[t]he not my phone or somebody used my phone or digital devices defense." *Id*. Detective Landamia reloaded the extracted data and examined "three files of note that were provided to me by Detective Sergeant Stebner, and pulled the timeline report for those three dates[.]" *Id*. at 37. Based on this second review of the extracted raw data, he discovered "a specific number of chats, and I believe one thread alone, which took place over the course of August 19th of 2022 through October 2nd of 2022[. T]here were over 4,000 media files exchanged just in that thread."[1] *Id*. at 40. Based on this second review, the detective provided ADA Jose "with a list of exhibits . . . to consider presenting through my testimony." *Id*.

ADA Jose then forwarded that list to Attorney Busico, which "included … text messages" between Kelly and his father "approximately ten minutes before one of the primary videos in this case was downloaded ... thereby preclud[ing] the possibility of someone else having used this phone." *Id*. at 60. It also included "text message[s] exchanged where—again, the

---

[1] It is not clear how many of these files were believed to contain child pornography. The Commonwealth did not seek to amend its criminal information to add any additional counts.

Commonwealth believes was [Kelly] requesting photographs of individuals under the age of 18[.]" *Id*. at 61.

Attorney Busico urged the trial court to exclude anything other than what was presented during the July 20 meeting. "There was a meeting in July where the evidence was identified per piece [*sic*] of electronics and that's when notice was given to the defense." *Id*. at 46. Alternatively, counsel asked for a continuance to review the material in more detail.

The Commonwealth asserted that exclusion was not warranted, arguing that as a matter of law its discovery obligations were satisfied because Attorney Busico could have requested a meeting to examine the extracted data or have an expert do so. The trial court responded, "I would feel a lot better if you knew about it before yesterday, because you're telling me Mr. Busico should have done something to find it. Yet, you and your office hold all the evidence and you didn't know about it until yesterday. That's what bothers me, frankly." *Id*. at 49. The court cited the July meeting, saying "whatever it is that came up yesterday wasn't shared [in July]." *Id*. at 50. The court ruled that "whatever was turned over prior to yesterday is admissible. Anything turned over yesterday is not." *Id*.

The Commonwealth timely filed a notice of appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement. The trial court filed a responsive Rule 1925(a) opinion, which expands on its rejection of the argument that Attorney Busico could have requested to review the extracted

data at any time. The court determined that the Commonwealth only "technically disclosed the entire extraction," as Attorney Busico was not given a copy of the raw data due to the alleged child pornography contained within. Trial Court Opinion, 11/30/23, at 5 (emphasis omitted). Moreover, reviewing the content requires specialized software and takes a significant amount of time. "In other words, this was not 'normal' discovery that Defense Counsel could review for a few minutes every day between meetings or at night in his home office before going to bed." *Id*. Notably, the court determined that the Commonwealth affirmatively represented during the July 20 meeting that whatever was shown during that meeting was the only incriminating evidence it intended to present at trial. "[Attorney Busico] specifically arranged a meeting with the Commonwealth wherein they stated they showed [him] all pertinent information, including the information they intended to use at trial." *Id*. The trial court also concluded that the fact the Commonwealth disclosed the additional exhibits "indicates that it knew it had an obligation to disclose the evidence and it immediately did so upon [its] discovery[.]" *Id*. at 6. "Again, if the Commonwealth honestly believed that it had no duty to disclose, it would not have emphasized that it turned over the evidence … as soon as it possibly could because it would have considered the evidence timely from the start." *Id*. The trial court maintains that, as a matter of law, the Commonwealth violated its discovery obligations, warranting the imposition of remedial sanctions.

Addressing the Commonwealth's argument that the trial court abused its discretion by excluding the evidence instead of granting a continuance, the court cites its broad discretion to tailor a remedy to the violation. The court defends its ruling by asserting that the additional material was cumulative of the incriminating videos the Commonwealth had previously shown at the July meeting. Alternatively, the court concludes that the Commonwealth committed prosecutorial misconduct, albeit unintentionally, as it "failed to properly and timely prepare for a trial accusing Mr. Kelly of serious felony offenses." *Id*. at 10. Granting a continuance under these circumstances "would result in perverse incentives by signaling that a deliberate lack of preparation is an excusable behavior." *Id*. at 11. Concluding that diligent investigation would have uncovered the additional material well before the eve of trial, the trial court requests that we affirm its order.

The Commonwealth presents three issues for our review.

1. Is this appeal properly before this Honorable Court as the Commonwealth certified that the order granting suppression will substantially handicap the prosecution?

2. Did the trial court err in excluding the evidence culled and prepared by Detective Landamia, in preparation for trial, pursuant to a finding that the Commonwealth committed a discovery violation where 1.) the entirety of the evidence in the possession of the Commonwealth was offered to defense counsel as available for review well before trial and where defense counsel failed to either review that evidence himself or obtain a defense expert to review it on defendant's behalf and 2.) where the Commonwealth has no obligation to provide defense counsel with a comprehensive list of the individual items it intends to introduce at trial?

- 7 -

3. Assuming *arguendo* that there was a discovery violation in this matter, did the trial court err in finding that the remedy was exclusion of the evidence which was allegedly provided late when the unambiguous holdings of our appellate courts command that a continuance is the proper remedy for late discovery disclosures?

Commonwealth's Brief, at 4.

We find that the second issue is dispositive and therefore do not address the third point of error.[2]

"Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, [this court] maintain[s] de novo review over the suppression court's legal conclusions." ***Commonwealth v. Brown***, 996 A.2d 473, 476 (Pa. 2010). "In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the appellee's witnesses along with the Commonwealth's evidence which remains uncontroverted." ***Id.***

Pennsylvania Rule of Criminal Procedure 573 requires disclosure of evidence by the Commonwealth where it is "(1) requested by the defendant, (2) material to the case, and (3) within the possession or control of the

_____

[2] We have jurisdiction over this interlocutory appeal as the Commonwealth certified in its notice of appeal that the order will terminate or substantially handicap the prosecution. Pa.R.A.P. 311(d). The Commonwealth presents the first issue due to the trial court questioning the certification, opining that it "is disingenuous" as the prosecution had informed the court that it was prepared for trial several times before the disclosure at issue herein. Trial Court Opinion, 11/30/23, at 1. "We do not delve into the certification where the order excludes or suppresses the Commonwealth's evidence or has the practical effect of doing so." ***Commonwealth v. Ghebremichael***, 319 A.3d 583, 585 (Pa. Super. 2024) (citation omitted). Since the order herein excludes evidence, we do not question the Commonwealth's good faith certification.

prosecutor." ***Commonwealth v. Santos***, 176 A.3d 877, 882 (Pa. Super. 2017). Pursuant to Rule 573's remedy provision:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E).

"[W]here the evidence is equally accessible or inaccessible to both the Commonwealth and the defense, the defense cannot use the discovery rules against the Commonwealth for its failure to produce the evidence." ***Santos***, 176 A.3d at 883 (citation omitted). A defendant is not entitled to a preview of what evidence the Commonwealth will use to prove its case. ***See Commonwealth v. Monahan***, 549 A.2d 231, 235 (Pa .Super. 1988) ("We agree with the trial court that the Commonwealth properly disclosed the evidence as required, and that the Commonwealth's theory of the case was protected as work product[.]").

The Commonwealth submits that ***Commonwealth v. Maldonodo***, 173 A.3d 769 (Pa. Super. 2017) (*en banc*), is directly on point with this case and establishes as a matter of law that the trial court erred. There, the Commonwealth obtained 466 jail phone calls between Maldonodo and other parties. The Commonwealth informed Maldonodo's attorney that it intended to introduce a total of six minutes from two of the calls. These calls were in

Spanish and the assigned prosecutor, who spoke Spanish, supplied an informal transcript of the six-minute portion he intended to introduce, in addition to digital copies of all 466 calls. Maldonodo filed a motion asking the trial court to order the Commonwealth to transcribe the entirety of all 466 calls so that counsel, who did not speak Spanish, could review their contents to determine if anything on the tapes was helpful. At a hearing, the Commonwealth agreed "to provide official transcriptions of 'these tapes.'" *Id*. at 772. The prosecutor later informed counsel that his superiors refused to pay for the official transcriptions. Maldonodo then sought exclusion of all 466 tapes, claiming that the Commonwealth had agreed to translate each call.

The trial court determined that the Commonwealth had promised to transcribe all 466 calls, and that its contractual breach warranted the sanction. Alternatively, the trial court reasoned that the constitutional right to effective representation required the Commonwealth to transcribe the calls so that counsel could review the material.

We rejected both theories. Addressing whether the Commonwealth breached a contractual promise, we determined that the Commonwealth's agreement to transcribe "these calls" was ambiguous. More importantly, under prevailing caselaw a trial court's power to preclude evidence when a party breaches a binding agreement is limited to cases where "the parties have actual knowledge of the sanction that is to be employed for failing to abide by the terms of the agreement, and one or more of the parties abjectly

refuse to comply." *Id*. at 776 (quoting *Commonwealth v. Hemingway,* 13 A.3d 491, 493 (Pa. Super. 2011)). There was no indication in the record that the parties understood that a possible sanction for breaching any agreement to supply official transcriptions was exclusion of the evidence.

With respect to the constitutional argument, we held that "the purpose of discovery is satisfied when the defense has access to the evidence. Nothing requires the Commonwealth to sift through the provided materials on the defendant's behalf." *Id*. at 783. "The Sixth Amendment guarantee of effective assistance of counsel assumes, since counsel is presumed effective, that the attorney will read the materials and find the helpful information. … [T]he onus is on counsel to review all materials to which she has access."

The trial court determined that *Maldonodo* "is inapposite to the matter at hand as those 466 phone calls were within the defendant's possession and were not so voluminous as to make it unfeasible for defendant to thoroughly review their contents." Trial Court Opinion, 11/30/23, at 6. We respectfully disagree, as we do not interpret *Maldonodo* to condition its accessibility holding on whether the defendant has physical possession and unfettered access to the material.[3] The mandatory disclosure provision of Rule 573

_____

[3] The fact of physical possession could not have been relevant to the holding in *Maldonodo*, as Maldonodo's trial counsel did not speak Spanish and thus needed assistance, whether from her client or an interpreter, to review the material. We perceive no legally significant distinction between physically possessing evidence that trial counsel cannot examine herself versus evidence in the possession of Commonwealth that is reviewable via appointment.

- 11 -

specifies that the Commonwealth shall disclose, *inter alia*, "any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]" Pa.R.Crim.P. 573(B)(1)(f). For material subject to mandatory disclosure, the Commonwealth "shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items." Pa.R.Crim.P. 573(B)(1). The Rule's inclusion of the ability to inspect the material suggests that physical possession is not a prerequisite.

We agree with the Commonwealth that **Maldonodo** establishes that the Commonwealth satisfied its discovery obligations by making the extracted raw data available for counsel to review upon request. Further, the record does not support that there was any promise by the Commonwealth that the evidence it intended to introduce at trial was limited to the evidence and information reviewed at the July 20th meeting. The trial court determined that the Commonwealth "stated they showed Defense Counsel … the information they intended to use at trial." Trial Court Opinion, 11/30/23, at 5. However, the Commonwealth vigorously contests this finding, asserting that the record does not support it. "There was never a request from defense counsel for a list of all exhibits they intended to use … and there was certainly never a representation from the Commonwealth or the police investigators that what was shown was the entirety of the evidence." Commonwealth's brief at 17. In fact, ADA Jose argued at the hearing that while he "put Mr. Busico on notice of" specific exhibits during the July 20 meeting, "that wasn't particularly the

point" of that meeting. N.T., 9/27/23, at 48. Attorney Busico did not contest that representation, although Kelly now claims that "[t]he obvious implication of the July 20, 2023 meeting was that Attorney Busico could prepare for trial under expectation that he had been shown all the evidence that would be introduced at [t]rial." Kelly's Brief at 12.

Furthermore, we acknowledge that **Maldonodo** arises in the context of access to material for purposes of finding exculpatory information, whereas here Kelly claims that the Commonwealth ambushed him by supplying additional inculpatory information. Any such distinction does not detract from the Court's holding that making material available to the defense satisfies the government's discovery obligations. "If the Commonwealth is secure from a post-trial **Brady** challenge on the grounds that the evidence was disclosed and accessible to defense counsel, it cannot simultaneously be precluded from entering portions of that evidence due to sheer speculation that counsel, despite that equal access, would presumptively fail to examine that material." **Id**. at 783–84.

We also find persuasive an unpublished decision from this Court that cited the fact of access in a scenario analogous to the present dispute. In **Commonwealth v. Kerr**, 2019 WL 3021851 (Pa. Super. filed 7/10/19),[4] Kerr argued on direct appeal that the Commonwealth "failed to turn over material

_____

[4] Non-precedential decisions published after May 1, 2019, may be cited as "persuasive" authority. **See** Pa.R.A.P. 126(b)(2).

evidence in violation of **Brady** … . Specifically, [Kerr] sought discovery of a CD containing approximately 40,000 data files that were extracted from the victim's cellular phone." **Id**. at *2. The Commonwealth turned over data it deemed material, but "refused to provide … a copy of the entire phone extraction because it included thousands of images of child pornography (namely, nude photographs of the victim)." **Id**. The panel determined that Kerr could not meet his burden of establishing that the material allegedly withheld would have changed the result. Additionally, we observed that

> [Kerr] and his defense counsel were given unlimited opportunities to review the entire contents of the CD. The fact that defense counsel only viewed the CD twice, for a total of eight hours, was not the fault of the Commonwealth, where nothing in the record indicates that the Commonwealth limited [Kerr]'s ability to review that material.

**Id**. at *4. Similarly, Attorney Busico's decision not to examine the phone cannot be attributed to the Commonwealth.

Accordingly, the Commonwealth complied with its discovery obligations by making the material accessible to Kelly and his attorney. We therefore are constrained to conclude the trial court erred by granting Kelly's motion and precluding the Commonwealth from introducing the subject evidence at trial.

We therefore reverse and remand for further proceedings consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/22/2024